**Opinion issued July 16, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00990-CV

————————————

**THE BETTER BUSINESS BUREAU OF
METROPOLITAN HOUSTON, INC., Appellant**

**V.**

**JOHN MOORE SERVICES, INC. AND
JOHN MOORE RENOVATION, LLC, Appellees**

---

**On Appeal from the 269th Judicial District Court
Harris County, Texas
Trial Court Case No. 2012-35162**

---

## O P I N I O N

This interlocutory appeal arises from a dispute between the Better Business

Bureau of Metropolitan Houston, Inc. and John Moore, Inc. over a business quality

rating and the right to display past awards. Asserting that a lawsuit John Moore filed against the Bureau was related to its exercise of free speech, the Bureau filed a motion to dismiss pursuant to the Texas Citizen's Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West Supp. 2012). The trial court denied the motion. We reverse and remand for further proceedings consistent with this opinion.

## Background

The Better Business Bureau is a non-profit corporation that seeks to promote ethical business practices, and it espouses a mission of "advancing marketplace trust" by setting standards for trustworthy businesses, encouraging best business practices, promoting business role models, and denouncing substandard marketplace behavior. To these ends, the Bureau rates business in the greater Houston area on a letter-grade scale and publishes information about area businesses on its website. On its website, the Bureau notes that its letter grades represent its "opinion of the business" and that the "grades are not a guarantee of a business's reliability or performance." The Bureau also invites selected businesses to become "accredited" members by asking them to abide by Bureau-promulgated standards and to pay a membership fee. In exchange, the Bureau offers accredited members the use of the Better Business Bureau seal, a page for the business on the

2

Bureau's website, and various services to help resolve disputes between businesses, such as a mediation program.

John Moore is in the business of providing home repair and maintenance services, such as air conditioner repair, pest control, and plumbing. Before December 2010, John Moore was an accredited business with the Houston Better Business Bureau, and it had received an "A+" rating on the Bureau's website. From 2003 to 2010, John Moore received the Bureau's "Award of Excellence," which the company displayed on its advertising materials. John Moore's president, Don Valentine, served as Chairman of the Houston Bureau from 2007 to 2008. In late 2010, however, John Moore resigned from the Houston Bureau, complaining about the methodology it used to determine its business ratings. The resignation coincided with the Houston Bureau's decision to revoke John Moore's accreditation in response to numerous consumer complaints. John Moore then informed the Houston Bureau that it moved its business headquarters to the Bryan-College Station area. Because the move of headquarters meant that the Houston Bureau no longer considered John Moore an area business, it changed its letter grade for the company to "NR" for "not rated."

In 2012, the Houston Bureau learned that John Moore was continuing to display a Houston address on its advertising and that the company's office in Bryan-College Station had no indications of actual business activity. John Moore

had also continued to display Better Business Bureau markings, including the Award of Excellence logo, on the company's website, trucks, employee uniforms, and written invoices. After learning of these activities, the Houston Bureau once again considered John Moore as a Houston-area business, and it resumed publication of a business rating on its website. Additionally, the Houston Bureau filed a trademark infringement lawsuit in federal court to challenge John Moore's continued use of the Bureau markings. For its part, John Moore believed it had the right to continue to display the awards because no temporal restrictions on their use were imposed when it originally received the awards. The Houston Bureau gave John Moore an "F" rating for a high number of consumer complaints, the failure to address those complaints, and the company's allegedly misleading use of the Bureau's trademarks.

John Moore then filed this lawsuit, asserting numerous causes of action against the Houston Bureau. The Bureau filed a motion to dismiss pursuant to the TCPA, which applies to legal actions based on, related to, or in response to the exercise of the rights of free speech, petition, and association. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). John Moore responded in support of the viability of only four of its causes of action: defamation, business disparagement, fraud, and tortious interference with business relationships. The trial court held a hearing and

timely denied the motion to dismiss. The Bureau then filed this interlocutory appeal.

## Analysis

The TCPA provides a procedure for dismissing meritless suits that are based on the defendant's exercise of the rights of free speech, petition, or association as defined within the statute. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. If the legal action is "based on, relates to, or is in response to" the exercise of those constitutional rights, a party may file to dismiss "the legal action." *See id.* § 27.003(a). In deciding whether to grant a motion under the TCPA and dismiss the lawsuit, the statute instructs a trial court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

## I. Appellate jurisdiction

John Moore challenges our appellate jurisdiction to review the trial court's ruling, so we address that as a threshold matter. The parties do not dispute that section 27.008(a) permits an interlocutory appeal when a motion to dismiss is denied by operation of law due to the trial court's failure to rule. *See id.* § 27.008(a). But the trial court in this case did timely rule on the Houston Bureau's motion. John Moore, relying on the opinion of the Second Court of Appeals in *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 525 (Tex.

App.—Fort Worth 2012, pet. filed), contends that section 27.008 does not provide an interlocutory appeal under these circumstances.

We disagree. This court has recently held, along with several other intermediate courts of appeal, that "section 27.008 permits an interlocutory appeal from the trial court's written order denying a motion to dismiss under the TCPA." *KTRK Television, Inc. v. Robinson*, No. 01-12-00372-CV, slip op. at 11 (Tex. App.—Houston [1st Dist.] July 11, 2013, no pet. h.) (citing *Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14–12–00896–CV, 2013 WL 407029 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, order); *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, No. 05-12-00587-CV, 2013 WL 2077636, at *6 (Tex. App.—Dallas May 15, 2013, no pet. h.); *San Jacinto Title Svcs., LLC v. Kingsley Props., LP*, No. 13-12-00352-CV, 2013 WL 1786632, at *4 (Tex. App.—Corpus Christi Apr. 25, 2013, no pet. h.)). Accordingly, we have interlocutory appellate jurisdiction over this appeal, and thus we address the denial of the Bureau's motion to dismiss.

## II.    Application of the TCPA

The Bureau argues that dismissal of John Moore's suit was required because it demonstrated by a preponderance of the evidence that the claims are a response to the Bureau's exercise of its right to free speech, and John Moore failed to present clear and specific evidence to support each element of its claims to

6

establish its prima facie case. John Moore disputes these points and also asserts that a business transaction exemption to the statute applies.[1] We address each contention in turn.

## A. Exercise of "the right of free speech"

To obtain dismissal under the TCPA, a defendant must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech; the right to petition; or the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). We review this determination de novo as an application of law to facts. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, No. 01-12-00581-CV, 2013 WL 1867104, at *6 (Tex. App.—Houston [1st Dist.] May 2, 2013, no pet. h.); *see also Rehak Creative Servs., Inc. v. Witt*, No. 14-12-00658-CV, 2013 WL 2211654, at *6 (Tex. App.—Houston [14th Dist.] May 21, 2013, no. pet. h.).

---

[1] John Moore also argues that an interpretation of the "clear and specific evidence" standard in the TCPA that requires a high burden of proof before trial would violate the open-courts provision of the Texas Constitution and the right to a trial by jury. To the extent that John Moore argues that the statute is unconstitutional, that argument was waived due to failure to present it to the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) ("A litigant must raise an open-courts challenge in the trial court."); *In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000) (attacks on the presumption that a statute is constitutional should be raised as an affirmative defense through appropriate pleadings before the trial court).

The TCPA defines "the exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). John Moore contends that the statute only applies to speech for the purpose of participation in government, and that the statute does not apply to lawsuits relating to commercial speech.

We review questions of statutory construction de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In interpreting statutes, our primary purpose is to give effect to the legislature's intent by relying on the plain meaning of the text adopted by the legislature, unless a different meaning is supplied by statutory definition or is apparent from the context, or the plain meaning leads to absurd results. *Id.*

The expressly stated purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. John Moore's interpretation places great weight on the words "and otherwise participate in government" as a limitation on the preceding list of "constitutional rights" that the statute is intended to "encourage and safeguard." *Id*. But this interpretation would render completely meaningless the references to the constitutional rights to

8

"speak freely" and "associate freely," if neither adds any additional meaning to the protection of the constitutional right "to petition" and to "otherwise participate in government." *Id.*

The right to free speech that is protected by the statute is expressly defined to include "communication made in connection with a matter of public concern," *id.* § 27.001(3), with a "matter of public concern" itself being defined to include, among other things, "a good, product, or service in the marketplace." *Id.* § 27.001(7)(E). These broadly defined references to speech rights do not support any inference that only a limited subclass of such communications is protected. John Moore's interpretation is further undermined by the statute's unqualified protection of the "exercise of the right of free speech," considering that the First Amendment protects speech conveying information about products and transaction in the commercial marketplace. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503–04, 116 S. Ct. 1495 (1996); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S. Ct. 1817 (1976).

We conclude that the scope of the statute is not limited only to protect speech directed toward the government. *Accord BH DFW*, 2013 WL 2077636, at *7 (concluding that a Better Business Bureau's rating of a company was a communication relating to an issue of public concern within the meaning of the TCPA); *Newspaper Holdings*, 2013 WL 1867104, at *7 (applying TCPA to tort

9

claims against a newspaper and its source). The exercise of the right of free speech as contemplated by the TCPA includes a person's right to communicate reviews or evaluations of services in the marketplace. The Houston Better Business Bureau's rating system falls within this definition. Opinion of the quality of a business's products and services are published based on the Bureau's own criteria, including customer feedback and complaints about those products and services. The Bureau characterizes its business ratings as "opinions," and it discloses its criteria for determining those opinions.

Because the Houston Bureau presented evidence that the legal actions at issue all relate to or are in response to the expression of opinions regarding the quality of John Moore's goods and services, principally business ratings and associated commentary, the legal actions are necessarily "related to" a matter of public concern, John Moore's products and services in the marketplace. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, 27.005(b). Therefore, the Houston Bureau met its burden to prove that John Moore's legal action related to the exercise of its right of free speech.

## B. Applicability of statutory exclusion

John Moore additionally argues that the TCPA does not apply because the Houston BBB is primarily engaged in the business of selling advertising and customer relations services. Section 27.010(b) provides that the TCPA "does not

10

apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *Id.* § 27.010(b).

Because the intended audience of the Houston Bureau's statements and conduct that John Moore complains about in this case is the consumer public at large, not the businesses to which the Bureau attempts to "sell" its membership services, the exemption does not apply. The statements or conduct that John Moore complains of are (1) the rating system, (2) the rating the Houston Bureau gave John Moore on its website and in its customer service interactions, and (3) the notice on its website that John Moore is not entitled to display the Award of Excellence logo. The intended audience all of these statements is the public consumer, not businesses who may be eligible for accreditation.

Even if, based on the evidence John Moore presented, the Bureau could be considered a business primarily engaged in selling membership services, the actual or potential buyers or customers of those services would be the accredited businesses, not the general public. In its lawsuit, John Moore does not complain of or make allegations regarding the Houston Bureau's statements or conducts related to selling its membership services to businesses, which would be the potential

buyers or customers of the Houston Bureau. Thus, we conclude that the exemption does not apply to John Moore's legal action in this case.

## C.    Prima facie case

To avoid dismissal of a claim covered by the TCPA, a plaintiff must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). The Houston Bureau contends that John Moore failed to do so. The Legislature's use of the term "prima facie case" implies a minimal factual burden: "prima facie" evidence is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Newspaper Holdings*, 2013 WL 1867104, at *6; *see also Rodriguez v. Printone Color Corp.*, 982 S.W.2d 69, 72 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223–24 (Tex. 2004). The statute requires that the proof offered address and support each "essential element" of every claim asserted with "clear and specific evidence." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). Accordingly, we examine the pleadings and the evidence in a light favorable to John Moore to determine whether it marshaled "clear and specific" evidence to support each element of its causes of action. *See Newspaper Holdings*, 2013 WL 1867104, at *6.

As the statute does not define "clear and specific" evidence, these terms are given their ordinary meaning. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "Clear" means "free from obscurity or ambiguity," "easily understood," "free from doubt," or "sure." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 229 (11th ed. 2003); *see also* BLACK'S LAW DICTIONARY 287 (9th ed. 2009) ("unambiguous," "sure," or "free from doubt"). "Specific" means "constituting or falling into a specifiable category," "free from ambiguity," or "accurate." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, *supra*, at 1198; *see also* BLACK'S LAW DICTIONARY, *supra*, at 1528 ("explicit" or "relating to a particular named thing"). Clear and specific evidence has also been described as evidence that is "unaided by presumptions, inferences, or intendments." *Rehak Creative Servs.*, 2013 WL 2211654, at *7 (citing *McDonald v. Clemens*, 464 S.W.2d 450, 456 (Tex. Civ. App.—Tyler 1971, no writ)).

Attached to its response to the motion to dismiss, John Moore filed the affidavit of its president, Don Valentine, as evidence to support its claims. John Moore also attached copies of relevant pages from the Houston Bureau's website to show the "F" rating, as well as copies of some customer complaints it had received along with the affidavit of its customer service director.[2]

---

[2] John Moore's brief also extensively relies on evidence that was excluded by the trial court, such as the transcript of a recorded conversation between

13

We consider each cause of action to determine whether it has been supported by clear and specific evidence.

## 1. Defamation

Defamation is a false and injurious impression of a plaintiff published without legal excuse. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see also Neely v. Wilson*, No. 11-0228, 2013 WL 3240040, at *5 (Tex. June 28, 2013). "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Neely*, 2013 WL 3240040, at *6 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21–22, 110 S. Ct. 2695, 2707 (1990)). A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing it to public hatred, contempt, ridicule, or financial injury, or if

John Moore's president and the president of the Houston Bureau. John Moore has not challenged the trial court's evidentiary rulings, and our analysis does not consider the excluded evidence.

14

it tends to impeach the person's honesty, integrity, or virtue. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2012). To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.) (citing 1 ROBERT D. SACK, SACK ON DEFAMATION 2–17 (3d ed. 2009)). But a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts the plaintiff's feelings, is not actionable. *Id.*

Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989); *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987). Questions of law are subject to de novo review. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). Whether a publication is an actionable statement of fact depends on its verifiability and the context in which it was made. *See Bentley v. Bunton*, 94 S.W.3d 561, 580–83 (Tex. 2002). We construe the statement as a whole based upon a reasonable person's perception of it. *Vice v. Kasprzak*, 318 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

### a.     *"Not accredited"*

John Moore alleges that it was defamed by statements that it was never accredited with the Houston Bureau and that it was not Better Business Bureau accredited in 2012.  In his affidavit, Valentine identified a statement on the Houston Bureau's website that John Moore "is not BBB accredited" as misleading, untruthful, and harmful because the company "was BBB accredited with the Bryan-College Station BBB and in turn the Dallas BBB."  For the same reasons, Valentine complained that the "NR" classification for "not rated" listed on the Houston Bureau website from 2010 to 2012 was false and misleading.

A statement that a business is not Better Business Bureau "accredited," even if false, is not defamatory.  Such a statement does not impugn John Moore's reputation by suggesting that it engaged in wrongful or unethical conduct.  *See, e.g.*, *Musser*, 723 S.W.2d at 655.  Instead, these statements would merely suggest that John Moore did not obtain accreditation with the Better Business Bureau—a purely optional accolade.  The printout from the Houston Bureau's website that John Moore included in its evidence explains:

> Businesses are under no obligation to seek BBB accreditation, and some businesses are not accredited because they have not sought BBB accreditation.
>
> To be accredited by BBB, a business must apply for accreditation and BBB must determine that the business meets BBB accreditation standards, which include a commitment to make a good faith effort to resolve any consumer complaints.  BBB Accredited Businesses must

16

pay a fee for accreditation review/monitoring and for support of BBB services to the public.

In short, accusing John Moore of not being accredited or never having been accredited does no more than characterize the company as abstaining from participation. Instead of portraying unaccredited businesses as worthy of public hatred, contempt, or ridicule, the Houston Bureau confirmed that businesses are not obligated to seek accreditation and must pay for the designation. Accordingly, the allegations regarding John Moore's purported non-accreditation are not defamatory.

Likewise, the statement on the Houston Bureau website from 2010 to 2012 that listed John Moore as "not rated" is not defamatory. Even if untrue, not being rated does not expose John Moore "to public hatred, contempt, ridicule, or financial injury." TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. The statement does not suggest that John Moore committed some wrong or engaged in any nefarious activities. Like being unaccredited by the Bureau, having no rating on the website suggests merely that John Moore has no rating. *See Musser*, 723 S.W.2d at 655 (holding statement not defamatory as matter of law that does not charge plaintiff with commission of a crime, violation of any law or contract, or with any unethical acts and business dealings).

17

**b.** *Advertising excellence awards*

Next, John Moore alleges it was defamed by a statement that it was not permitted to advertise having won Bureau awards of excellence. In his affidavit, Valentine pointed to "bold and extra large language" on the website "which clearly and improperly implied that John Moore Services only 'claimed' to have won all the Education Foundation Awards for Excellence, but hadn't actually won them."

The Houston Bureau's statements regarding John Moore's disputed right to display the "Award of Excellence" mark are non-defamatory because, as Valentine himself acknowledged, the website truthfully described the parties' opposing contentions concerning the use of the marks. The Houston Bureau explained on its website that John Moore "continue[s] to advertise winning numerous BBB Awards for Excellence for the years 2003–2010," despite the fact that the Bureau "has asked that this practice cease." Acknowledging that a dispute exists over these advertising of these awards is not a defamatory statement, let alone a statement showing the Bureau's negligent regard for the truth, as a defamation showing requires.

Moreover, despite characterizing the webpage as having "clearly and improperly implied" that the awards had not been actually won, John Moore did not present clear and specific evidence of the actual content of these statements— as opposed to what Valentine contends they "implied"—to facilitate a

18

determination of whether they were defamatory. John Moore did not include a copy of that webpage, actually quote the allegedly offending language, or even describe in detail what the Houston BBB website stated, as opposed to Valentine's conclusory description of what he thought the website "implied."

### c. *"F" rating*

John Moore also complains about the publication of the "F" rating on the Houston Bureau website. But the "F" rating itself cannot be defamatory because it is the Bureau's self-described "opinion" of the quality of John Moore's services, which lacks a high degree of verifiability. *See Neely*, 2013 WL 3240040, at *6; *Vice*, 318 S.W.3d at 18. Even to the extent such an opinion is verifiable based on the standards the Bureau uses to determine its ratings, the "F" is not a false and defamatory statement. The Bureau considers customer complaints regarding the business in its standards for determining the ratings, and the website identified customer complaints and advertising issues as the reason for John Moore's low rating. The consumer complaint evidence that John Moore itself filed in response to the motion to dismiss includes several complaints about the company's costly services and poor customer support, supporting the low opinion expressed on the website.

Accordingly, after carefully reviewing the record, we conclude that John Moore failed to adduce clear and specific evidence to establish a prima facie case that the Houston Bureau made any actionable defamatory statements.

## 2. Business disparagement

To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). "A business disparagement claim is similar in many respects to a defamation action." *Forbes*, 124 S.W.3d at 170. The two torts differ in the interest protected: a defamation claim protects an injured party's personal reputation, while a business disparagement claim protects economic interests. *Id.* "[A] business disparagement defendant may be held liable 'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion.'" *Id.* (quoting *Hurlbut*, 749 S.W.2d at 766). Accordingly, at a minimum, a statement must be defamatory to support a business disparagement claim. *See, e.g.*, *Rehak Creative Servs.*, 2013 WL 2211654, at *9; *Means*, 315 S.W.3d at 212. John Moore makes the same allegations to support its business disparagement claim as it made

20

regarding its defamation claim. But as explained above, it did not present clear and specific evidence establishing that the Houston Bureau published a false and defamatory statement, which is essential to a business disparagement claim. *See Hurlbut*, 749 S.W.2d at 766. Accordingly, John Moore did not present a prima facie case of business disparagement.

### 3.    Fraud

A person commits fraud by (1) making a representation of material fact (2) that is false (3) and was known to be false or asserted recklessly without knowledge of its truth (4) with the intent that the misrepresentation be acted upon, and (5) the person to whom the misrepresentation is made justifiably relies upon it and (6) is injured as a result. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). The defendant's acts or omissions must be a cause-in-fact of the plaintiff's injury, i.e., a substantial factor in bringing about an injury which otherwise would not have occurred. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). The maker of the misrepresentation must have had reason to expect the plaintiff to rely on his statement when the statement was made. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001). The transaction sued upon must be of the type the defendant could have contemplated. *See id.* Furthermore, promises of

21

future performance generally do not constitute actionable fraud, as they are not representations of fact, but may be actionable if made with the intent and purpose to deceive and with no intention of performing. *Formosa Plastics*, 960 S.W.2d at 48.

In its original petition and response to the motion to dismiss, John Moore alleged specifically that the Houston Bureau falsely represented the following information to it:

> (1) that John Moore could continue advertising its receipt of the Awards of Excellence, even after it was no longer a member of the Houston BBB, by not placing any restrictions on the awards when they were given to John Moore from 2003 to 2010; (2) that John Moore could not advertise with the BBB "trademark(s)" registered to the Council of Better Business Bureaus, Inc., since it is no longer a member of the Houston BBB; (3) that the Houston BBB would not include price complaints in a business's complaint record, nor would it factor price complaints into the overall rating of a business; (4) that the Houston BBB is an independent and unbiased rating agency; and (5) that the Houston BBB follows its mission statement and values statement that claims its goal is to "[b]e honest and ethical in all of its business activities;" "[t]reat everyone with integrity[,] . . . respect and dignity;" and "communicate with honesty."

John Moore referred to its affidavits as evidence of the damages it suffered as a result of these allegedly fraudulent representations. In those affidavits, John Moore stated that the Houston Bureau's "statements to John Moore's current and prospective customers are false and are causing John Moore to lose customers, valuable goodwill and revenue." Based on representations that it could continue to display Bureau markings, John Moore allegedly "continued to spend millions of

dollars in advertising with the Awards."  John Moore also stated it suffered a 20% decrease in business after the Houston BBB posted the "F" rating on its website.

### a. *Alleged misrepresentations regarding advertising of awards*

The first category of misrepresentations alleged in support of the fraud claim relate to John Moore's advertising of its past awards from the Bureau.  The allegations are that John Moore was told "that it could continue advertising its receipt of the Awards of Excellence, even after John Moore was no longer a member of the Houston BBB, by not placing any restrictions on the awards when they were given to John Moore from 2003 through 2010," yet it was subsequently told that it "cannot advertise with the BBB trademark(s), registered to the Council of Better Business Bureaus, Inc., since they are no longer members of the Houston BBB."

The allegation that the Houston Bureau did not affirmatively restrict John Moore's use of the Bureau's markings and award insignia does not amount to a misrepresentation of a material fact.  To the extent John Moore was "encouraged" to advertise the awards in the past, there is no allegation that this encouragement was tantamount to a perpetual license to use Bureau trademarks, nor could it mean that the Bureau could never take a subsequent position that it would be misleading for a company with a current "F" rating to prominently feature Bureau awards in its advertising.  Even if John Moore was encouraged at one point to advertise its

Better Business Bureau status and awards, that does not preclude the Houston Bureau from later taking the position that to continue such advertising is misleading in light of John Moore's current rating and status.

John Moore also relies on a letter it received from the manager of the Education Foundation of the Better Business Bureau of Greater Houston and South Texas as a representation that it could continue to display the awards, but this letter actually undermines any claim of reasonable reliance. The letter confirmed "that John Moore Services has been 'grandfathered' to use the wreath version of the Awards for Excellence logo as a graphic element in its advertising as long as the current BBB logo is also displayed on the ad." The letter also acknowledged that John Moore "invested heavily in signage for its vehicles using the wreath graphic when the [award] program was first resurrected years ago." Nevertheless, the letter also stated: "Although this 'grandfather' exemption will eventually end, it is currently in effect to avoid saddling the Company with the expense of re-painting all its fleet and re-designing all of its advertising graphics." The full context of the letter defeats any justifiable reliance by John Moore on further investment in signage, uniforms, or other similar uses of the Bureau logo. The letter indicated that the "exemption" would not be permanent, and that it was intended to save John Moore the expense of repainting and redesigning existing materials—not to authorize fresh expenditures on promotional materials featuring the Bureau and

24

Awards of Excellence logos. The letter also cannot be reasonably read to suggest that the Bureau was forfeiting its right to ever take the position in the future that it would be misleading for an F-rated or nonrated business to advertise Bureau awards it had won in the past.

John Moore also complains that the Houston Bureau represented that it "cannot advertise with the BBB trademark(s), registered to the Council of Better Business Bureaus, Inc., since they are no longer members of the Houston BBB." John Moore may disagree with the Bureau, but the statement is not an actionable misrepresentation of material fact. The statement reflects the Houston Bureau's legal position. The Houston Bureau sued John Moore in court for trademark infringement, so John Moore was presumably aware of the Houston Bureau's position regarding the display.

**b.** ***Alleged misrepresentations about rating based on price complaints***

John Moore alleges that the Houston Bureau represented that it "would not count price complaints" in its record of a complaints or factor such price complaints into the Bureau's rating. But John Moore failed to provide any evidence to establish that it reasonably relied on this alleged misrepresentation. John Moore did not present evidence that it acted or failed to act due to the Bureau's alleged misrepresentation. *See Ernst & Young*, 51 S.W.3d at 577

25

(plaintiff establishes reliance by showing that the defendant's acts and representations induced it to either act or refrain from acting to its detriment).

**c.** *Alleged misrepresentations of independence and neutrality*

The original petition and response to the motion to dismiss alleged that the Bureau committed fraud by misrepresenting that it "is an independent and unbiased rating agency" and that it follows its mission statement and values statement that claims the Houston Bureau's goal is to "'[b]e honest and ethical in all of its business activities;' '[t]reat everyone with integrity[,] respect and dignity;' and 'communicate with honesty.'" But John Moore presented no clear and specific evidence of when or how the Houston Bureau represented that it was "independent and unbiased," and it provided no evidence that made any reference whatsoever to the Bureau's "mission statement and values statement." For instance, John Moore did not provide any relevant context for the alleged misrepresentations, such as who made them, where and when they were made, or even how they were communicated (such as orally, in writing, or on the website). John Moore also presented no clear and specific evidence to establish the element that it justifiably relied on the alleged representation that the Bureau is a neutral and unbiased rating agency. In sum, John Moore did not offer clear and specific evidence to establish its claim that the Houston Bureau made an actionable misrepresentation about its neutrality.

26

Accordingly, John Moore's evidence does not clearly and specifically establish all of the essential elements of a prima facie fraud claim for the alleged misrepresentations made by the Houston Bureau.

### 4. Tortious interference

To establish a cause of action for tortious interference with contract, a plaintiff must prove that (1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). To establish a cause of action for tortious interference with prospective contract or business relationships, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.,* 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

John Moore's tortious interference with contract claims fail for failing to establish by clear and specific evidence the essential element of the existence of a contract subject to interference. John Moore argues that the evidence showed that some complaining customers mentioned on the Bureau's website that they would file complaints demanding their money back from John Moore and that there was interference with its contracts with the Dallas and Bryan-College Station chapters. But John Moore offered no clear and specific evidence of any of these contracts or their terms.

"To prevail on a tortious interference claim, a plaintiff must present evidence that the defendant interfered with a specific contract." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). To establish interference, "the plaintiff must present evidence that some obligatory provision of a contract has been breached." *Id.* John Moore did not present evidence regarding the terms of any of contracts with customers or the other Better Business Bureau chapters, or how those contracts were breached. Instead, John Moore only alleged that such contracts exist. John Moore also did not clearly and specifically demonstrate what injuries or damages it suffered as a result of the interference—two other necessary elements of the tortious interference claim. It only contended that its general revenues fell after the "F" rating was published. This does not amount to clear and specific evidence establishing the essential

28

elements of a prima facie claim that the Houston Bureau willfully and intentionally interfered with John Moore's contracts with its customers and other Better Business Bureau chapters.

John Moore's tortious interference with business relationships claim also fails because it did not present clear and specific evidence that the Houston BBB committed an "independently tortious or unlawful act." *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 381–82 (Tex. App.—Houston [1st Dist.] 2005, no pet.). As discussed above, John Moore did not present clear and specific evidence to establish a prima facie claim that the Houston BBB committed any other tortious or unlawful acts. Thus, John Moore necessarily has failed to present a prima facie claim supported by clear and specific evidence of interference with business relationships. *See id.* at 382–83 (noting that this element requires determining the validity of the plaintiff's only tort claim).

## Conclusion

We hold that the Houston Better Business Bureau satisfied its burden under the TCPA to show that John Moore's claims against it are based on, relate to, or are in response to, the exercise of their free speech rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). We further hold that John Moore has failed to sustain its burden to show, by clear and specific evidence, a prima facie case for each essential element of its claims, or that its claims fall within the commercial-

speech exemption. *See id.* §§ 27.005(c), 27.010(b). We therefore reverse the trial court's denial of the motion to dismiss and remand the case to the trial court for further proceedings. *See id.* § 27.009(a).

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Justice Sharp, dissenting. Dissent to follow.