ACCEPTED
01-14-01025-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/7/2015 3:55:08 PM
CHRISTOPHER PRINE
CLERK

# 01-14-01025-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/7/2015 3:55:08 PM
CHRISTOPHER A. PRINE
Clerk

In the

# First Court of Appeals

## SITTING AT HOUSTON

### ALI LAHIJANI AND MEGA SHIPPING, LLC,

*Appellants,*

**v.**

### MELIFERA PARTNERS, LLC, MW REALTY GROUP, AND MELISSA WALTERS,

*Appellees*

Appealed From the 157th District Court of
Harris County, Texas
Trial Court Cause No. 2014-60091

# APPELLANTS' REPLY BRIEF

JEFFREY L. DORRELL
State Bar No. 00787386
jdorrell@hanszenlaporte.com

## HANSZEN LAPORTE

11767 Katy Freeway, Suite 850
Houston, Texas 77079
Telephone: 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR APPELLANTS**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS……………………………………………………………ii

INDEX OF AUTHORITIES …………………………………………………iii

REPLY ISSUES PRESENTED FOR REVIEW …………………………1

SUMMARY OF ARGUMENT……………………………………………2

ARGUMENT …………………………………………………3

Reply Issue 1. Did the TCPA Apply to Plaintiffs' Claims? ……………3

    A. Did Defendants' Allegedly Defamatory Statements Relate to Issues of "Economic or Community Well-Being" or the "Provision of Services in the Marketplace?"…………………………………………3

    B. Could Defendants Show That the TCPA Applied By Relying on Plaintiffs' Pleadings Alone?………………7

    C. Does the TCPA Apply to Privately Communicated Speech? ………………………………7

Reply Issue 2. Did the Absolute Judicial Communications Privilege Bar Plaintiffs' Defamation and Business Disparagement Claims?"………………………………8

Reply Issue 3. Did Plaintiffs Marshal "Clear and Specific Evidence of a *Prima Facie* Case for Each Element of Each Claim in Question?"………………………………9

CONCLUSION……………………………………………15

PRAYER ……………………………………………16

CERTIFICATE OF SERVICE………………………………17

CERTIFICATE OF WORD COUNT COMPLIANCE……………18

# INDEX OF AUTHORITIES
## <u>CASES</u>

**Page**

***American Heritage Capital, LP v. Gonzalez***,
436 S.W.3d 865, (Tex. App.—Dallas 2014, no pet.)……………**11, 12**

***Avila v. Larrea***,
394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied)……………**5, 6**

***Bentley v. Bunton***,
94 S.W.3d 561 (Tex. 2002)…………………………………………**11, 12**

***Better Bus. Bureau of Metro. Houston v. John Moore Servs.***,
441 S.W.3d 345 (Tex. App.—Houston [1st Dist.]
2013, pet. denied)………………………….……………………**9**

***Billington v. Houston Fire & Cas. Ins***.,
226 S.W.2d 494 (Tex. App.—Fort Worth 1950, no writ) …………..**14**

***Double Diamond, Inc. v. Van Tyne***,
109 S.W.3d 848 (Tex. App.—Dallas 2003, no pet.)…...……………**11**

***Elizondo v. Krist***,
415 S.W.3d 259 (Tex. 2013) ………………………………………**9**

***Forbes, Inc. v. Granada Biosciences, Inc***.,
124 S.W.3d 167 (Tex. 2003)………………………………………...**11**

***Gumpert v. ABF Freight Sys., Inc***.,
293 S.W.3d 256 (Tex. App.—Dallas 2009, pet. denied) …………….**11**

***I-10 Colony, Inc. v. Lee***,
2015 Tex. App. Lexis 4136 (Tex. App.—Houston [1st Dist.]
April 23, 2015, n.p.h.) ……………………………………………..**6**

***In re Lipsky***,
411 S.W.3d 530 (Tex. App.—Fort Worth 2013,
orig. proceeding [mand. denied])..…………………………………**4**

***In re Lipsky***,
2015 Tex. LEXIS 350 (Tex. 2015)…………………………………**9**

*James v. Brown*,
　　637 S.W.2d 914 (Tex. 1982)....……………..…………………**8**

*Kinney v. BCG Atty. Search, Inc*.,
　　No. 03-12-00579-CV, 2014 Tex. App. LEXIS 3998
　　(Tex. App.—Austin 2014, pet. denied.)………………………**4**

*Lippincott v. Whisenhunt*,
　　2015 Tex. LEXIS 347 (Tex. April 24, 2015)…………………….**4**

*Masson v. New Yorker Mag., Inc.*,
　　501 U.S. 496 (1991) …………..…………………………**10-11**

*Neely v. Wilson,*
　　418 S.W.3d 52 (Tex. 2013)……..……………………..…**11**

*New Times, Inc. v. Isaacks*,
　　146 S.W.3d 144 (Tex. 2004) …………………………….…..**11**

*Robertson v. Sw. Bell Yellow Pages, Inc*.,
　　190 S.W.3d 899 (Tex. App.—Dallas 2006, no pet.) ………………..**12**

## STATUTES

TEX. CIV. PRAC. & REM. CODE § 27.005(b)………………………**4**

TEX. CIV. PRAC. & REM. CODE § 27.005(c)……………………….**8**

TEX. CIV. PRAC. & REM. CODE § 27.005(d)……………………….**8**

TEX. OCC. CODE § 1101.558………………………………………**3**

## OTHER

RESTATEMENT (SECOND) OF TORTS § 588 (1981) ……………………**8**

# REPLY ISSUES PRESENTED FOR REVIEW

**Reply Issue 1:**     **Did the TCPA apply to plaintiffs' claims?**

**Reply Issue 2:**     **Did the absolute judicial communications privilege bar plaintiffs' defamation and business disparagement claims?**

**Reply Issue 3:**     **Did plaintiffs marshal "clear and specific evidence of a *prima facie* case for each element of each claim in question?"**

## SUMMARY OF THE ARGUMENT

<u>First</u>, plaintiffs actually concede in their brief that a real estate broker's attempt to receive an "illegal commission" from a property sale would be a "matter of public concern" within the ambit of the TCPA. Plaintiffs' attempt to avoid this concession by arguing that Lahijani "blatantly lied" would lead the Court into error. Courts do not judge the truth or falsity of a movant's statements in order to decide whether the TCPA applies.

<u>Second</u>, the judicial communications privilege protects even allegedly defamatory statements made *before* a contemplated judicial proceeding has commenced. The judicial communications privilege is not limited to communications to "prosecutorial and/or law enforcement agencies," as plaintiffs incorrectly contend.

<u>Third</u>, the Walters affidavit's conclusory opinions and stated contentions are not the "clear and specific evidence" of elements of libel, libel *per se,* and business disparagement that the TCPA requires. Furthermore, aside from the fact that Lahijani's statements were privileged judicial communications, the statements are simply not capable of defamatory meaning as a matter of law.

**ARGUMENT**

**Argument and Authorities—Issue 1**

**Reply Issue 1:** **Did the TCPA Apply to Plaintiffs' Claims?"**

**A. Did Defendants' Allegedly Defamatory Statements Relate to Issues of "Economic or Community Well-Being" or the "Provision of Services in the Marketplace?"**

Yes. Surprisingly, plaintiffs actually concede that a real estate broker's attempt to receive an "illegal commission" from a property sale—

> **…would be a matter of public concern making any communications regarding this attempt protected by the [TCPA] because such communications would be a matter of public concern that relate[s] to "economic or community well-being" or "services in the marketplace."**

Br. p. 48. Plaintiffs do not dispute that real estate broker Walters was required to obtain "written consent" from both seller and buyer in order to represent them. *See* Texas Real Estate License Act, TEX. OCC. CODE § 1101.558.[1] Plaintiffs also do not dispute that Walters:

(i)     failed to obtain Lahijani's "written consent;" (CR 139, 142) and

(ii)     claimed a brokerage commission of $19,500.00 *anyway*.[2]

Thus, Walters *did*, in fact, attempt to receive an "illegal commission," and any statement by Lahijani to the effect that she did so would be "a matter of public concern." The TCPA applies.

---

[1]     "The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary.…"

In an agile feint to avoid the conclusion their own logic dictates, plaintiffs declare that Lahijani's statements do not relate to matters of public concern because "Lahijani blatantly lied." Br., p. 49. But this argument would require the Court to determine the truth or falsity of Lahijani's communications in order to decide whether the TCPA applies. This is precisely the *opposite* of the procedure that the TCPA requires:

> **The statutory definitions for the right of free speech … do not include language requiring us to determine the truth or falsity of communications when deciding whether a movant for dismissal has met its preliminary preponderance of the evidence burden under Section 27.005(b).**

*In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, orig. proceeding [mand. denied]); *see also* **Kinney v. BCG Atty. Search, Inc**., No. 03-12-00579-CV, 2014 Tex. App. LEXIS 3998, at *15-16 (Tex. App.—Austin 2014, pet. denied.).

To contradict defendants' argument that Walters' managerial services—for which she charged **$3,397.11**[3]—were a "matter of public concern" under the TCPA because they were "services in the marketplace," plaintiffs offer a new variation of their "not-public-enough" argument:[4]

---

[2] The $19,500.00 commission is shown on Line 703 of the Settlement Statement. (CR 35.)

[3] Plaintiffs explain that $3,397.11 is half of $7,294.22 "minus $250 option fee split." (CR 32.)

[4] In the trial court, plaintiffs responded to defendants' TCPA motion to dismiss by arguing that the TCPA did not apply to "privately communicated speech." (CR 104-06.) After the Texas Supreme Court reversed the Texarkana court of appeals on this point in **Lippincott v. Whisenhunt**, 2015 Tex. LEXIS 347 at *4 (Tex. April 24, 2015), plaintiffs abandoned this argument in the instant appeal. Br., p. 26-27.

4

> **[Walters'] services were on behalf of herself as an investor and the limited other 18 investor partner group of Plaintiff Melifera and an outside investor to protect foreclosed properties that had been purchased at auction until sale. No more, no less. Walters … did not offer or advertise any managerial services to any and all real estate developers in the public at large as well.**

Br., p. 47.

Walters thus appears to contend that her managerial services are not "in the marketplace" because Walters does not "advertise or market" her managerial services to "the public at large." (CR 125.) Even if true, this is academic. The TCPA does not require that services be "advertised or marketed" to constitute "services in the marketplace." The fact that Walters' services were available, were rendered, and were purchased for value by defendants from Walters instead of from some competing service provider—all of which is undisputed here (CR 125)—is all that is required for services to be "in the marketplace."

As authority for plaintiffs' remarkable proposition that the Court should read into the TCPA a requirement for "advertising or marketing" that simply is not there, plaintiffs cite *Avila v. Larea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012). Br., p. 45. Somewhat melodramatically accusing defendants of "sh[ying] away" from *Avila* as though it were "kryptonite," plaintiffs argue that *Avila* means Walters was not "providing managerial services in the marketplace." Br., p. 47.

*Avila* supports no such proposition. As this Court recently observed, *Avila* held that communications about a lawyer's handling of a former client's case "related to" a matter of public concern because the subject of the communications was "a service in the marketplace"—the lawyer's services. *See **I-10 Colony, Inc. v. Lee***, 2015 Tex. App. LEXIS 4136 at *13-*14 (Tex. App.—Houston [1st Dist.] April 23, 2015, n.p.h.) (describing the holding of *Avila*); *see Avila*, 394 S.W.3d at 655. Plaintiffs' conclusion that *Avila* means services offered to fewer potential consumers than "the public at large" cannot be "services in the marketplace" for purposes of the TCPA is a *non sequitur*. No court has ever so held. The fact that defendants obtained Walters' services through a channel other than Walters' "advertising" her services to "the public at large" does not somehow remove Walters' services from "the marketplace."

To hold otherwise—in addition to performing judicial surgery on the TCPA—would be to oblige future courts to engage in the impossible exercise of deciding what forms of "advertising" were sufficiently "public" and how many potential customers had to be reached by such advertising before the services at issue could be found to be "in the marketplace" (and thus be "matters of public concern" under the TCPA). No such exercise is warranted by the statutory language.

**B. Could Defendants Show That the TCPA Applied By Relying on Plaintiffs' Pleadings Alone?**

Yes. Plaintiffs argued incorrectly below in opposition to defendants' motion to dismiss that defendants could not meet their burden to show that the TCPA applies by relying "solely on the pleadings of plaintiffs." (CR 107-10.) On this point, plaintiffs led the trial court into error. In the instant appeal, plaintiffs have now abandoned this argument. Br., p. 39. No further discussion is necessary.

**C. Does the TCPA Apply To Privately Communicated Speech?**

Yes. Plaintiffs argued incorrectly below in opposition to defendants' motion to dismiss that the TCPA *did not* apply to "privately communicated speech." (CR 104-06.) On this point, too, plaintiffs led the trial court into error. In the instant appeal, plaintiffs have now abandoned this argument. Br., p. 26-27. *See* supra, n. 4. No further discussion is necessary.

## Argument and Authorities—Issue 2

**Reply Issue 2:** Did the Absolute Judicial Communications Privilege Bar Plaintiffs' Defamation and Business Disparagement Claims?

Yes. Even if the nonmovant brings forth clear and specific evidence as required by TCPA § 27.005(**c**), the court may *still* be required to dismiss the nonmovant's legal action under § 27.005(**d**):

> **Notwithstanding the provisions of [§ 27.005](c), the court <u>shall dismiss</u> a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the movant's claim.**

TCPA § 27.005(d) [emphasis added].

The judicial communications privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings. The privilege also attaches to communications made, as here, *preliminary* to a proposed judicial proceeding. ***James v. Brown***, 637 S.W.2d 914, 916-17 (Tex. 1982), quoting RESTATEMENT (SECOND) OF TORTS § 588 (1981).

Plaintiffs do not respond substantively to this argument except to deny that communications made "privately"—as opposed to statements made to "prosecutorial and/or law enforcement agencies"—are protected by the privilege. Br., p. 55. This is simply wrong, even under the authorities plaintiffs themselves rely upon.

## Argument and Authorities—Issue 3

**Issue 3:** Did Plaintiffs Marshal "Clear and Specific Evidence of a *Prima Facie* Case for Each Element of Each Claim in Question?"

No. The conclusory, self-serving statements of Walters' affidavit (CR 122-26) are not the "clear and specific evidence" that the TCPA requires. *See **Better Bus. Bureau of Metro. Houston v. John Moore Servs.**,* 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case."). As noted in defendants' opening brief,

> **Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA.**

*In re Lipsky*, 2015 Tex. LEXIS 350 at *23-24; citing *Elizondo v. Krist,* 415 S.W.3d 259, 264 (Tex. 2013).

The Walters affidavit recites numerous conclusions and contentions— but few facts. For example:

- "Defendant Lahijani clearly and directly contends that I am a thief who has falsified expenses…." (CR 124, ¶ 5)

- "Defendant Lahijani clearly and directly contends … that I am financially careless and incompetent;" (CR 124, ¶ 5)

- "Defendant Lahijani clearly and directly contends … that I am trying to receive an illegal and/or improper broker's commission…." (CR 124, ¶ 5)

- "I contend that the aforementioned letter and e-mail have seriously defamed and libeled my professional and personal character…." (CR 125, ¶ 6)

- "I contend that the aforementioned letter and e-mail … were published by Defendant Lahijani with actual malice and hatred toward me as a woman." (CR 125, ¶ 6)

- "I contend that my libel cause of action apart (sic) of this lawsuit is not based on, related to or in response to Defendant Lahijani's exercise of free speech." (CR 126, ¶ 9)

- "I contend that all [defamatory statements by Lahijani] about me were false and have damaged my business and personal reputations a great deal." (CR 126, ¶ 9)

Conspicuous by their absence from the Walters affidavit is: (i) testimony to the *actual* allegedly defamatory Lahijani statements complained of; (ii) clear and specific evidence of how Lahijani's *actual* statements were false; (iii) clear and specific evidence of how Walters' reputation was damaged; and (iv) clear and specific evidence of plaintiffs' pecuniary harm. These omissions alone render the Walters affidavit inadequate as evidence of the elements of libel and business disparagement—"clear and specific" or otherwise. But the problems with plaintiffs' evidence do not end there.

Based on nothing more than Walters' subjective belief—articulated as a "contention" in her affidavit (CR 125, ¶ 6)—plaintiffs argue that Lahijani's unspecified statements were made "with actual malice and hatred toward [Walters] as a woman." *Id*.; Br., p. 62. Even if taken as true, this is irrelevant to "actual malice" in the context of a defamation claim. "Actual malice" in defamation cases is *not* hatred, ill will, spite, enmity, or wanton desire to injure. *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510-

10

11 (1991); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 161-62 (Tex. 2004). In defamation cases, "actual malice" means knowledge of falsity or reckless disregard for the truth. *Masson*, 501 U.S. at 510-11; *Bentley v. Bunton*, 94 S.W.3d 561, 590 (Tex. 2002). There must be evidence that the defendant entertained serious doubts about the truth of the publication or had a high degree of awareness of the probable falsity of the published information. *Forbes, Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 171 (Tex. 2003); *Bentley*, 94 S.W.3d at 591. Here, the Walters affidavit provides none. And the problems with plaintiffs' evidence do not end there.

A statement is defamatory if it tends to injure the subject's reputation, to expose him to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity, or virtue. *American Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.). A statement may be false, abusive, unpleasant, or objectionable without being defamatory in light of the surrounding circumstances. *Id*.; *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.). Whether a statement is capable of a defamatory meaning is a question of law for the court. *Gumpert v. ABF Freight Sys., Inc*., 293 S.W.3d 256, 264 (Tex. App.—Dallas 2009, pet. denied). Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *See Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013)

11

("[S]tatements that are not verifiable as false cannot form the basis of a defamation claim."). Courts classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made. *Bentley*, 94 S.W.3d at 581. Whether a statement is of fact or opinion is also a question of law. *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.).

Against the backdrop of these case authorities, the *American Heritage Capital* court found *none* of the following three statements capable of defamatory meaning as a matter of law:

(i) "The guy that was supposed to handle closing could barely speak english (sic)."[5]

(ii) "Chris and end (sic) everyone I talked to at this company were incompetent. They reviewd (sic) my credit rating and promised a quick close. Then the list of things got longer and longer."[6]

(iii) "At one point they asked for an explanation of $200 out of a $30,000 deposit to make sure we were not 'borrowing money' for closing. It was my sons (sic) birthday money for god's sakes!!!!"[7]

---

[5] The *American Heritage Capital* court held that, although the statement constituted "opinionated criticism," it was "not egregious enough to be defamatory." *Id.* at 875.

[6] The *American Heritage Capital* court held that "statements implying that someone is incompetent are nonactionable opinions because they are not objectively verifiable." *Id.* at 876.

[7] The *American Heritage Capital* court held that "whether a lending business is excessively demanding is not objectively verifiable, but rather a matter of subjective opinion." *Id.* at 876.

12

In the case at bar, the allegedly defamatory statements include Lahijani's statements in a letter *to Walters' attorney* (made in the process of settlement negotiations) such as the following:

(i) "Ms. Walters tried to slip in a commission to herself at the last minute without notification or approval by the other party. By the way, no broker fees were shown on the final contract." (Br., p. 58; CR 119.)

(ii) "Ms. Walters needed to clear any expenses with me, if she wanted to participate. Make no mistake, there is no such thing as a requisition, purchase order, or approval request." (Br., p. 58; CR 119.)

(iii) "We feel it is inappropriate for our investment partner to secretly terminate the contract that we jointly signed and somehow get a contract from the same agent on July 9th when the [agent's] transition from Gary Greene to [Walters'] agency is not reflected until July 29th, oh, and magically put in for commission (by e-mail the day before closing) on a listing agreement that we neither signed nor had been made aware of." (Br., p. 59; CR 119.)

(iv) "[Ms. Walters] was formerly claiming $7,900 and was happy to accept payment for phantom expenses, which she now admits she does not have." (Br., p. 59-60, CR 120, ¶ 1.)

(v) "Mega Shipping, since it never authorized a commission to MW Realty nor was it given the opportunity, proposes that the effective commission to MW Realty be reduced to Three (3) Percent instead of the Six (6) Percent that was paid." (CR 120.)

(iii) "Ms. Walters needs to take responsibility for inadequate paperwork, lack of communication to and authorization from her partner Mega Shipping." (CR 120.)

Plaintiffs argue repeatedly that the "perception a reasonable person would get from reading" each of Lahijani's statements is that "Walters is a thief

13

trying to receive an illegal or improper real estate broker's commission."

Br., pp. 58-61. But, like the allegedly defamatory statements in **American Heritage Capital**, Lahijani's statements are not "egregious enough" to be defamatory, not objectively verifiable, or both. And the problems with plaintiffs' evidence do not end there, either.

Perhaps recognizing that Lahijani's statements are clearly not defamatory on their face, plaintiffs now appear to contend that the *actual* statements by Lahijani are defamatory by innuendo or implication. The problem with plaintiffs' new approach is that plaintiffs failed to plead such a theory. (CR 21-23, ¶¶ 35-40.) Having failed to plead defamation by innuendo, plaintiffs may not now rely on this theory to supply evidence in support of their defamation claim that does not otherwise exist. *See* **Billington v. Houston Fire & Cas. Ins**., 226 S.W.2d 494, 496 (Tex. App.— Fort Worth 1950, no writ).

## CONCLUSION

Defendants established that plaintiffs' suit was based on, related to, or in response to defendants' exercise of the right of free speech. However, plaintiffs failed to marshal "clear and specific evidence of a *prima facie* case for each element" of the three claims defendants challenged:

(i)     Libel;

(ii)    Libel *per se*; and

(iii)   Business disparagement.

Therefore the Court should dismiss the claims. Furthermore, defendants are immune from plaintiffs' claims for defamation, defamation *per se*, and business disparagement because the communications sued upon are protected by the absolute judicial communications privilege.

## PRAYER

For these reasons, defendants pray that the Court reverse the denial of their motion to dismiss and render judgment dismissing with prejudice plaintiffs' claims for:

(i)     Libel;

(ii)    Libel *per se*; and

(iii)   Business disparagement.

Defendants pray that the Court remand the case to the trial court for an award of reasonable attorney's fees and sanctions sufficient to deter the filing of similar actions in the future.

Respectfully submitted,

**HANSZEN⬥LAPORTE**

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
State Bar No. 00787386
jdorrell@hanszenlaporte.com
11767 Katy Freeway, Suite 850
Houston, Texas 77079
Telephone: 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR APPELLANTS**

# CERTIFICATE OF SERVICE

I hereby certify that on _____8-7_____, 2015, a true and correct copy of the foregoing was sent by U.S. mail to the following counsel of record:

U. Lawrence Boze'
U. Lawrence Boze' & Associates, P.C.
2212 Blodgett
Houston, Texas 77004
713-520-0260
**FAX: 713-520-6194**
**COUNSEL FOR APPELLEES MELIFERA PARTNERS, LLC,**
**MW REALTY GROUP, AND MELISSA WALTERS**


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**

## CERTIFICATE OF WORD COUNT COMPLIANCE

In compliance with TEX. R. APP. P. 9.4, relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document including footnotes (excluding captions, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 2,863.

/s/ Jeffrey L. Dorrell

**JEFFREY L. DORRELL**