ACCEPTED
01-14-00776-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 5:36:40 PM
CHRISTOPHER PRINE
CLERK

# No. 01-14-00776-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 5:36:40 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS

Schlumberger Limited and Schlumberger Technology Corporation,
*Appellants/Cross-Appellees,*

v.

Charlotte Rutherford,
*Appellee/Cross-Appellant.*

On Appeal from the 127th Judicial District Court of Harris County, Texas
Trial Court Cause 2014-13621

## CHARLOTTE RUTHERFORD'S REPLY BRIEF
## AS CROSS-APPELLANT

Joseph Y. Ahmad
State Bar No. 0094100
Timothy C. Shelby
State Bar No. 24037482
Adam Milasincic
State Bar No. 24079001
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010

Richard B. Specter (*pro hac vice*)
California State Bar No. 114090
CORBETT, STEELMAN & SPECTER
18200 Von Karman Avenue, Suite 900
Irvine, California 92612

Thomas C. Wright
State Bar No. 22059400
Shelley J. White
State Bar No. 24056520
Raffi O. Melkonian
State Bar No. 24090587
WRIGHT & CLOSE, LLP
One Riverway, Suite 2200
Houston, TX 77056
Tel: 713-572-4321
Fax: 713-572-4320

***Counsel for Charlotte Rutherford***

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................2

INDEX OF AUTHORITIES.............................................................................3

PRELIMINARY STATEMENT ........................................................................5

ARGUMENT ....................................................................................................6

I.     Schlumberger's construction of the TCPA is contrary to its plain language. ................................................................................6

        A.     The TCPA does not limit its protections to speech made in a public setting. ......................................................6

        B.     This Court has refused to require a nexus to participation in government..................................................9

II.    Rutherford's construction of the TCPA does not lead to absurd results..............................................................................................13

III.   The record does not include clear and specific evidence of each breach-of-contract element. ..................................................16

CONCLUSION................................................................................................24

CERTIFICATE OF COMPLIANCE...............................................................26

CERTIFICATE OF SERVICE ........................................................................27

# INDEX OF AUTHORITIES

Page

## Cases

*Avila v. Larrea*, 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied) ................................................................................................12

*Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ...........................................................................................6, 10

*Burkhart v. Burkhart*, 960 S.W.2d 321 (Tex. App.—Houston [1st Dist.] 1997, writ denied) ..........................................................15

*Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210 (Tex. App.—Houston [1st Dist.] 2014, no pet.)......................................................10

*City of Keller v. Wilson*, 168 S.W.3d 802, (Tex. 2005)...........................19

*Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.).......................................................................10

*Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985) ......................................16

*i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F3d 831 (Fed. Cir. 2010).........................13

*In re Crown Castle Int'l Corp.*, 247 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).................................................15

*Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319 (Tex. 1984)....................20

*Madariaga v. Morris*, 639 S.W.2d 709 (Tex. App.—Tyler 1982, writ ref'd n.r.e.)...........................................................................................22

*Medina v. Tate*, 438 S.W.3d 583 (Tex. App.—Houston [1st Dist.] 2013, no pet.)..................................................................................10

*Mekhail v. Duncan-Jackson Mortuary, Inc.*, 369 S.W.3d 482 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ...........................................18

*Paul E. Hawkinson Co. v. Dennis*, 166 F.2d 61 (5th Cir. 1948) ............................13

*Rankin v. McPherson*, 483 U.S. 378 (1987)........................................8

*Rivers v. Johnson Custodial Home, Inc.*, No. A-14-CA-484-SS, 2014 WL 4199540 (W.D. Tex. Aug. 22, 2014) ............................................7

*Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) .................................................................13

*St. Martin Evangelical Lutheran Church v. S. Dakota*, 451 U.S. 772 (1981) ..........................................................................................9

*Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530 (Tex. App.—Dallas 2007, pet. denied)...............................................................22

*Strom v. Memorial Hermann Hosp. Syst.*, 110 S.W.3d 216 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) .....................................15

*Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.3d 303 (Tex. 1978)............................14

*Whisenhunt v. Lippincott*, 416 S.W.3d 689 (Tex. App.—Texarkana 2013, pet. filed) ...................................................................................7

*Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ..........................................................20

## Statutes

TEX. CIV. PRAC. & REM. CODE § 27.001................................................ 7, 8, 9, 12, 14

TEX. CIV. PRAC. & REM. CODE § 27.002........................................................ 9, 14, 16

TEX. CIV. PRAC. & REM. CODE § 27.003................................................................12

TEX. CIV. PRAC. & REM. CODE § 27.005.......................................................... 14, 24

TEX. CIV. PRAC. & REM. CODE § 27.010.......................................................... 13, 14

U.S. CONST. art. I, § 8.................................................................................12

## Other Authorities

Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 31 (Amy Gutmann ed., 1997) .................................................6

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

Charlotte Rutherford presents this reply brief in further support of her request that the Court reverse the portion of the trial court's order denying the motion to dismiss as to the contract claim asserted by Schlumberger Limited and Schlumberger Technology Corporation (collectively "Schlumberger") and remand this case to the trial court for (1) a determination of the amount of additional attorney's fees that are owed to Rutherford and (2) rendition of a final judgment in Rutherford's favor.

## PRELIMINARY STATEMENT

As established in Rutherford's previous briefs, Schlumberger did not file this lawsuit because some inexpensive thumb drives went missing. And Schlumberger did not file false affidavits to support a temporary restraining order because it believed Rutherford, a highly rated lawyer whom Schlumberger had employed for almost seven years, was using trade secrets against it. Schlumberger filed this lawsuit out of a desire to demean Rutherford's reputation so as to derail the '319 patent-infringement case currently pending in federal court. Because Schlumberger has no clear and specific evidence of any of the false and vindictive things it has alleged against Rutherford, the entire case should have been dismissed.

## ARGUMENT

### I. Schlumberger's construction of the TCPA is contrary to its plain language.

According to Schlumberger, the TCPA affords protection only to petitioning and association activities that involve communications broadcasted publicly and having some nexus to public policy. To find support for this position, Schlumberger relies heavily on legislative history, dicta, and a concurring opinion—essentially, everything but the words actually used in the TCPA. This is not surprising because, under the plain meaning of the terms defining the TCPA's scope, Rutherford prevails. *See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (stating that court's primary objective in construing the TCPA is to "give effect to the legislature's intent by relying on *the plain meaning of the text* adopted by the legislature.") (emphasis added); *see also* Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 31 (Amy Gutmann ed., 1997) (recalling quip that "[o]ne should consult the text of the statute . . . only when the legislative history is ambiguous," and lamenting that joke is "no longer funny" because "[r]eality has overtaken parody").

#### A. The TCPA does not limit its protections to speech made in a public setting.

Contrary to Schlumberger's suggestion, the TCPA does not limit its protections for association and petitioning activities only to communications made

6

publicly. The Legislature could easily have restricted the TCPA's application based on who overhears the communication, but it did not. The Legislature chose instead to define "communication" broadly to include *any* "statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE § 27.001(1).

The cases Schlumberger cites do not support its attempt to amend the definition of a "communication" by adding the words "made in a public setting." *See Whisenhunt v. Lippincott*, 416 S.W.3d 689 (Tex. App.—Texarkana 2013, pet. filed); *Rivers v. Johnson Custodial Home, Inc.*, No. A-14-CA-484-SS, 2014 WL 4199540 (W.D. Tex. Aug. 22, 2014). *Whisenhunt* is based entirely on the express statutory link between the right of free speech and matters of "public concern." 416 S.W.3d at 696. There, the administrator of a medical partnership sent internal emails criticizing one of the partners. *Id.* at 692–94. The partner sued for defamation and tortious interference. *Id.* at 694. The administrator moved for dismissal on the ground that his emails were protected by the right of free speech. *Id.* at 694–95. Because the TCPA defines "free speech" to include only communications "made in connection with a matter of public concern," TEX. CIV. PRAC. & REM. CODE § 27.001(3), the court inferred that private conversations could never involve public concerns. 416 S.W.3d at 696.

The *Whisenhunt* court was mistaken to assume that private conversations can never involve public concerns or enjoy constitutional protections. *See, e.g.*, *Rankin v. McPherson*, 483 U.S. 378, 386–97 (1987) (finding that co-worker's remark to another employee about assassinating President Reagan was constitutionally protected despite occurring in private workplace conversation). Nevertheless, *Whisenhunt* is easily distinguished because it did not involve any petitioning or association activity. The court considered only whether protected speech was involved. Unlike the statutory definition of the "right of free speech," the definitions of the "right to petition" and "right of association" do not include any limitation based on "matter[s] of public concern." *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(4). The *Whisenhunt* court itself recognized this key distinction, observing that it would not have reached the same result in a "right to petition" case. 416 S.W.3d at 699 n.14.

*Rivers*, an unpublished decision of a federal district court, is also no help to Schlumberger. 2014 WL 4199540, at *2. That case, like *Whisenhunt*, involved only the "free speech" prong of the TCPA. And the federal district court followed *Whisenhunt* because the defendants "made no effort to respond to its holding or reasoning, or to distinguish it." *Id.*

To the extent *Whisenhunt* or *Rivers* can be read as anything more than specific applications of free speech issues, Rutherford respectfully submits the

8

cases were wrongly decided in light of the TCPA's plain text. Not a single word in the statute suggests that free speech—let alone petitioning or free association—is protected only if made in a public setting. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(4).

## B. This Court has refused to require a nexus to participation in government.

Schlumberger is correct that the TCPA states its purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." TEX. CIV. PRAC. & REM. CODE § 27.002. But Schlumberger is incorrect that this general statement of purpose overrides section 27.001's precise definitions of the "right to petition" and "right of association." *See St. Martin Evangelical Lutheran Church v. S. Dakota*, 451 U.S. 772, 791 n.19 (1981) (observing that general statements of legislative purpose "cannot defeat the specific and clear wording of a statute"). Applying the appropriate rules of statutory construction and recognizing that the clear text of section 27.001 expands the common-law definitions of petitioning and association, this Court already has rejected Schlumberger's argument:

> [Appellee's] interpretation places great weight on the words "and otherwise participate in government" as a limitation on the preceding list of "constitutional rights" that the statue is intended to "encourage and safeguard." But this interpretation would render completely

9

> meaningless the references to the constitutional rights to "speak freely" and "associate freely," if neither adds any additional meaning to the protection of the constitutional right "to petition" and to "otherwise participate in government."

*Better Bus. Bureau,* 441 S.W.3d at 353 (internal citations omitted); *accord Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *2 n.1 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.) (stating that text of TCPA does not limit its scope).

The court's opinion in *Cheniere Energy, Inc. v. Lotfi* does not change anything. 449 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In that case, a different panel of this Court observed that the TCPA requires some nexus between "the communication used to invoke the TCPA and general parameters of First Amendment protection" without differentiating or even citing *Better Business Bureau. See* 449 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2014, no pet.). *Better Business Bureau* cannot be overturned absent a decision of the Court sitting en banc or a material change in the statute, neither of which has occurred here. *See Medina v. Tate*, 438 S.W.3d 583, 588 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel on this court.").

Moreover, *Cheniere Energy*'s statement regarding a nexus requirement is dicta. That appeal arose from an in-house lawyer's suit against her former employer and several co-workers for retaliatory firing. 449 S.W.3d at 211. The trial court denied the co-workers' motion to dismiss tortious interference claims under the TCPA. *Id.* at 212. In deciding whether the co-workers met their burden to show the TCPA applied, the Court noted that the co-workers did not file any affidavits or other evidence establishing a communication that qualified for protection under the TCPA; instead, they relied exclusively on the factual allegations in the petition. Because those factual allegations supported more than one equally plausible conclusion, the Court concluded the co-workers did not satisfy their burden. *Id.* at 213–15. Accordingly, the *Cheniere Energy* holding concerns the sufficiency of the pleadings and evidence, not the nature of the communication. *Id.*

Contrary to Schlumberger's assertion, the issue for this Court is not whether Rutherford's activities are protected by the United States or Texas Constitutions. The issue is whether Rutherford exercised rights protected by the TCPA. Had it wanted to, the Legislature could have written the TCPA to apply only whenever a lawsuit is based on a party's exercise of constitutional rights, making the statute's scope co-extensive with First Amendment doctrine. But the Legislature did not write that statute. Instead it chose to cover any legal action that is based on, relates

11

to, or is in response to the party's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association. *See* TEX. CIV. PRAC. & REM. CODE § 27.003. All three of these terms have statutory definitions considerably broader than what constitutional law may have otherwise covered. *See* id. § 27.001(2)–(4). And it makes sense that the Legislature would not want to hinge the TCPA's meaning or applicability on ever-evolving concepts of constitutional law.

If the Court disagrees, however, any standard requiring a communication on a matter of "public concern" is satisfied here. The TCPA makes clear that "a good, product, or service in the marketplace" is a matter of "public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E). Dynamic 3D's lawsuit, and Rutherford's alleged communications, relate to Dynamic 3D's '319 patent and Schlumberger's Petrel software. The Petrel software is a product or service in the marketplace and thus qualifies as a "public concern." *See id.*; *see also Better Bus. Bureau*, 441 S.W.3d at 353–54 (review of home repair service was "public concern" under the TCPA); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied) (attorney's legal services involved "public concern" under TCPA). Moreover, Dynamic 3D's patent rights are a public concern as a matter of constitutional law, *see* U.S. CONST. art. I, § 8, cl. 8, and "it is the public interest which is dominant in the patent system." *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 665 (1944); *see also i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F3d

12

831, 863 (Fed. Cir. 2010) (patent suits implicate public interests of consumers, licensees, and manufacturers), *aff'd*, 131 S. Ct. 2238 (2011); *Paul E. Hawkinson Co. v. Dennis*, 166 F.2d 61, 63 (5th Cir. 1948) ("[T]his is a patent suit and as such there is a public interest involved . . . .").[1]

## II. Rutherford's construction of the TCPA does not lead to absurd results.

Schlumberger suggests that Rutherford's views of the petitioning and association activities protected by the TCPA "abrogate or substantially undermine longstanding Texas statutory and common law remedies for tortious and unlawful conduct." (Cross-Apes. Br. at 40) According to Schlumberger, a broad definition of the right to petition the courts will bring all malicious prosecution and abuse-of-process claims within the scope of the TCPA, which the Legislature could not have intended. And a broad definition of the "right of association" will allow defendants to escape liability for violations of the Texas's Free Enterprise and Antitrust Act of 1983, the Insurance Code, and anti-discrimination laws—also something not intended by the Legislature. These arguments are red herrings.

---

[1] Schlumberger also contends the commercial-activity exception stated in section 27.010(b) removes this case from the protection of the TCPA. Schlumberger made this same argument in its brief as appellant, and Rutherford's previous response explains that the exception does not apply because the communications at issue do not arise out of the sale or lease of goods, services, or an insurance product. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b). Moreover, the intended audience for Rutherford's communications was either her employer or the federal court, not the buyers and customers protected by the exception. *See id., Schimmel v. McGregor*, 438 S.W.3d 847, 857–58 (Tex. App.—Houston [1st Dist.] 2014, pet. filed). For the purpose of this reply, Rutherford incorporates the arguments in her brief as appellee by reference. (Ape. Br. at 44–46)

Again, the best expression of the Legislature's intent is "the plain meaning of the text adopted." *Better Bus. Bureau*, 441 S.W.3d at 353. To prevent retaliatory games like the one Schlumberger is playing here, the TCPA applies to any "cause of action" filed "in response to" protected conduct. TEX. CIV. PRAC. & REM. CODE §§ 27.001(6), 27.002, 27.005(b). The TCPA does not contain any provision that states only certain claims are subject to its protection. Quite the opposite, it applies to *any* "legal action" that implicates the rights defined by the statute. *Id.* § 27.003(a). Where the Legislature intended to exempt specific causes of action from the TCPA's all-encompassing scope, it did so expressly. *Id.* § 27.010(c)–(d) (exempting all claims for personal injury, wrongful death, survival, and related to insurance).

The Legislature already addressed Schlumberger's concerns about insurance cases by expressly excluding all actions brought under the Insurance Code or arising out of an insurance contract from the TCPA. *Id.* § 27.010(d). But the other claims for which Schlumberger feigns concern are not listed among the causes of action exempt from the TCPA's protections. *Id.* That omission must be considered intentional. *See Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.3d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply.").

14

Not only are the claims Schlumberger warns about missing from the TCPA's stated exemptions, but they are also missing from this lawsuit. This lawsuit does not involve any claims for violation of the State's antitrust, anti-discrimination, or insurance laws. And there is no claim for malicious prosecution or abuse of process. The only claim Rutherford is asking this Court to consider is Schlumberger's breach of contract claim, which, for all the reasons stated in Rutherford's briefing and pursuant to Schlumberger's clear admission, Schlumberger filed in response to Rutherford's decision to associate with a new company for the purpose of enforcing its patent portfolio and her perceived role in a subsidiary company's patent-infringement suit.[2]

Moreover, Schlumberger misses a broader point. The TCPA does not insulate any tortfeasor or wrongdoer from liability. It simply adds an additional layer of procedural protection.[3] All of the claims Schlumberger has singled out as

---

[2]    The pleadings and evidence establish that Schlumberger began preparations for this retaliatory suit only three days after the '319 patent litigation was filed. (*Compare* 1 CR 270, *with* 1 CR 284–86). In its own petition, Schlumberger acknowledged targeting Rutherford "as a result of [the '319 patent] litigation," and, in interrogatory answers, again confessed that it did not make any accusations of theft against Rutherford "until a lawsuit was filed against Schlumberger." (1 CR 15; 2 CR 505)

[3]    The law incorporates numerous other procedural and substantive hurdles that still allow meritorious claims to proceed. *See, e.g.*, *In re Crown Castle Int'l Corp.*, 247 S.W.3d 349, 354 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (discussing heightened, substantive pleading requirement for derivative suits under Delaware law); *Strom v. Memorial Hermann Hosp. Syst.*, 110 S.W.3d 216, 227 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (discussing "heavy" burden on medical malpractice plaintiffs to comply with very specific requirements for expert reports and severe sanctions for failure to comply); *Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (discussing elevated proof requirements in certain child-custody-modification

being at risk for extinction may still be asserted so long as they are supported by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.002 (explaining that statute allows "meritorious lawsuits for demonstrable injury" to proceed even if the suit implicates protected rights). If the TCPA did create a liability shield for entire classes of torts or statutory violations, perhaps Schlumberger's arguments would make more sense. Because the TCPA is not a liability shield, however, Schlumberger's argument has no more support in logic than it does in the statute's text.

## III. The record does not include clear and specific evidence of each breach-of-contract element.

The parties have offered competing interpretations of the TCPA's "clear and specific evidence" standard.[4] To resolve this appeal, however, the Court need not decide which interpretation is correct. Even if circumstantial evidence is considered, Schlumberger failed to prove a prima facie case of breach of contract.

---

proceedings); *Elliott v. Perez*, 751 F.2d 1472, 1476–82 (5th Cir. 1985) (discussing elevated burdens in federal immunity cases).

[4] Schlumberger argues any construction of the TCPA that excludes circumstantial evidence runs afoul of the Texas Constitution's open-courts provision. Schlumberger made this same argument in its brief as appellant. As stated in Rutherford's previous response, the "clear and specific evidence" standard hardly creates an impossible condition that would violate the Texas Constitution, and at least one Texas court already has considered and rejected Schlumberger's argument. *See Combined Law Enforcement Ass'n of Tex.*, 2014 WL 411672, at *10. For the purpose of this reply, Rutherford incorporates the arguments in her brief as appellee by reference. (Ape. Br. at 49–52)

Schlumberger contends that part of the trial court's order refusing to dismiss the contract claim must be affirmed because Schlumberger presented clear and specific evidence that:

- Rutherford breached the confidentiality agreement by "delet[ing] files, including numerous files whose names clearly signify IP content, from her company-issued laptop." (Cross-Apes. Br. at 65)

- Rutherford breached the confidentiality agreement by "fail[ing] to return drives containing confidential Schlumberger trade secrets." (*Id.*)

- Schlumberger is entitled to "monetary compensation" because it owned the drives Rutherford failed to return. (*Id.* at 69)

- Schlumberger is entitled to "specific performance of the confidentiality agreement to have its devices and information returned." (*Id.*)

When the evidence offered by Schlumberger to support each of these allegations is reviewed carefully, however, the holes in Schlumberger's case are apparent.

First, Schlumberger has not presented any specific evidence explaining whether the alleged "deletions" from Rutherford's company-issued laptop resulted in the *actual* loss of information. Cowen discerned the names of the items "deleted," but his affidavit does not state that the alleged deletion was anything more than sending those items to a recycling bin where they could be recovered. (4 CR 1341) Schlumberger's own Executive IT Support person explained that Schlumberger's "auto backup" system stored the contents of Rutherford's laptop to Schlumberger's server every day. (4 CR 1209) If the files on Rutherford's laptop were stored on the company server or could otherwise be recovered, then the

17

alleged deletions are not a breach of the confidentiality agreement that has resulted in harm warranting damages. Nor is it a reasonable construction of a standard employee confidentiality agreement that an employee breaches that agreement every time she deletes a file from her computer. *See Mekhail v. Duncan-Jackson Mortuary, Inc.*, 369 S.W.3d 482, 485 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (observing that, under *de minimus non curat lex* doctrine, "law does not care for, or take notice of, very small or trifling matters").

Second, Schlumberger's allegation that the failure to return electronic storage devices constitutes a breach resulting in damages has even greater proof problems. In the trial court, Schlumberger placed much emphasis on Rutherford's interrogatory answer that she still possesses one USB drive that she plugged into a Schlumberger computer. (6 CR 2045) As explained fully in Rutherford's opening brief, Rutherford supplied a forensic image of that drive to Schlumberger's attorneys. (Cross-Ant. Br. at 33-34)   Because the drive contains nothing more than Rutherford's personal photographs, it is not surprising that Schlumberger has abandoned its emphasis on Rutherford's possession of the drive on appeal. (6 CR 2045) To distract from the absence of clear and specific evidence of monetary damages,[5] Schlumberger has argued it is entitled to specific performance for the

---

[5]    Moreover, Rutherford's interrogatory states that she does not recall whether the USB drive was even issued to her by Schlumberger or was one of her personal drives. (6 CR 2045) Schlumberger knows the serial number of the USB drive that Rutherford possesses, but Schlumberger never supplied any receipt, purchase order, or other evidence to prove that the

18

return of electronic storage drives containing confidential information. A drive that, without dispute, contains no trade secrets or other confidential information does not advance Schlumberger's specific-performance argument.

Instead, the primary evidence Schlumberger cites to support its allegation that Rutherford breached the confidentiality agreement by removing the drives from its facility are witness statements that Schlumberger could not find the drives where Rutherford testified she left them. (4 CR 1406–07, 1414, 1431–32) But that evidence is not clear or specific evidence of breach of the confidentiality agreement. The evidence requires the Court to pile inference upon unsubstantiated inference: Because Rutherford used the drives at work, the drives must have been purchased by Schlumberger; because Lennon could not find the USB drives on her desk and Nava could not find the external hard drive in her desk drawer, Rutherford must have taken the drives; because the drives were missing, the only place Rutherford could have put them is somewhere outside of Schlumberger's facility.

This stacking of threadbare inferences is not permitted under Texas law. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813–14 (Tex. 2005) (stating that competing inferences and stacked inferences are no evidence). Schlumberger

USB drive ever belonged to Schlumberger, as opposed to being purchased by Rutherford to store her personal photos. In other words, Schlumberger failed to provide any evidence—let alone the required clear and specific evidence—that any USB drive in Rutherford's possession was Schlumberger-owned "equipment" that, under her confidentiality agreement, had to be returned.

cannot stack inference upon implausible inference and claim to have satisfied any evidentiary standard—let alone the "clear and specific evidence" standard—to support its conclusion that, simply because it could not find a few electronic storage drives, Rutherford loaded the devices with Schlumberger's trade secrets and took them to Acacia.

To reach the conclusion urged by Schlumberger, this Court also must ignore numerous other, more probable conclusions to the contrary: Schlumberger lost the materials in the nine months between when Rutherford left the company and when Schlumberger began looking for the materials;[6] Schlumberger did not look hard for the materials; someone else took the materials; or finding a few unlabeled portable drives at a technology conglomerate's headquarters is akin to finding a needle in a haystack. Texas law prohibits that. *See, e.g.*, *id.*; *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex. 1984) (refusing to credit "meager circumstantial evidence giving rise to inferences which are equally consistent"); *Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552, 555 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

---

[6]  Robin Nava, who took over Rutherford's office, stated that "[t]here was no external hard drive in the file cabinets, drawers, or anywhere else in Ms. Rutherford's former office." (4 CR 1414) This begs the question: If the external storage devices contained confidential information and trade secrets and Nava did not find the drive when she moved into the office immediately after Rutherford's departure, why did Schlumberger wait so long to look for the drive?

20

Third, Schlumberger gives short shrift to the issue of monetary damages. According to Schlumberger, two items of evidence establish that it is entitled to recover monetary damages for the loss of its physical storage drives: (1) Lennon's statement that she gave Rutherford multiple USB drives and (2) DeLeon's statement that he gave Rutherford a portable hard drive.[7] (1 CR 73, 76, 200) But Lennon did not even know how many USB drives she gave Rutherford, and Lennon's deposition testimony does not indicate that she had any way of knowing, for example, through tracking of serial numbers, which drives were purchased by Schlumberger. (1 CR 263-67) The record does not contain any receipt or invoice evidencing Schlumberger's purchase of the drives or their cost. Thus, contrary to Schlumberger's assertions, there is no evidence that Schlumberger is entitled to monetary damages for loss of the devices in question, much less that those years-old devices retain any monetary value that would entitle Schlumberger to replacement costs.

---

[7] DeLeon's affidavit, submitted in support of Schlumberger's *ex parte* request for a TRO, states that he gave Rutherford an external hard drive in 2013, which the company purchased in 2011. (1 CR 73) DeLeon's statements about the external hard drive were discredited, however, when he testified later that he supplied the external hard drive to Rutherford in 2011—two years earlier than stated in his affidavit. (1 CR 296–98) Under oath at his deposition, DeLeon explained that he performed a backup of Rutherford's Personal Storage Table files—which are used in connection with Microsoft Outlook to store email messages— to the external hard drive in 2011. (1 CR 296-99) But, contrary to his affidavit, DeLeon did not transfer anything from Rutherford's company-issued laptop to an external storage device in 2012 or 2013. (1 CR 297) Also contrary to his affidavit, DeLeon conceded having no personal knowledge of whether Rutherford downloaded confidential information onto USB drives even though he stated in his affidavit that she had done so. (1 CR 73, 301)

Fourth, under the authorities cited by Schlumberger, its alternative request for specific performance for return of the drives is viable only if monetary damages would be insufficient to remedy the alleged breach. *See, e.g.*, *Madariaga v. Morris*, 639 S.W.2d 709, 711 (Tex. App.—Tyler 1982, writ ref'd n.r.e.); *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 536 (Tex. App.—Dallas 2007, pet. denied). Schlumberger has not proven, or even argued, that it could not be made whole for any alleged breaches by an award of monetary damages. (Cross-Apes. Br. at 64) But even if Schlumberger had made that showing, specific performance necessarily depends on clear and specific evidence that the lost drives contain trade secrets.[8] To identify the information Rutherford allegedly saved on the drives, Schlumberger relies exclusively on Cowen's opinion that Rutherford connected a number of portable storage drives to her company-issued laptop and viewed certain files before leaving Schlumberger. (4 CR 1334 *et seq.*)

But, again, simply because Rutherford accessed the files does not support a conclusion that she was trying to steal confidential information. This evidence would support a number of equally probable conclusions to the contrary—the first being that Rutherford accessed the files at a time when she was still employed by Schlumberger and had a business purpose for doing so. The business purpose is

---

[8] For all the reasons stated in Rutherford's brief as appellee, there is no clear and specific evidence that Rutherford actually took any trade secrets from Schlumberger on portable storage drives. (Ape. Br. at 53–60)

obvious—Rutherford downloaded thousands of files to prepare Robin Nava, her successor, to take over. And it is undisputed that Nava received those files on a drive left by Rutherford. (3 CR 1204; 4 CR 1416, 1592, 1597; 6 CR 2045) It is not surprising that Schlumberger relegates this important fact to a footnote in its brief. (Cross-Apes. Br. at 9 n.6) Rutherford's tremendous effort to set Nava up for success in her new role as Schlumberger's senior intellectual property attorney is entirely inconsistent with Schlumberger's attempt to portray Rutherford, who was consistently rated by Schlumberger as an outstanding performer, as a thief. (1 CR 249–62, 290–91)

In addition, Cowen's findings are reasonably explained by Rutherford's interrogatory statements that she used another USB drive to retrieve her Outlook contacts and iTunes files from her company-issued laptop. (6 CR 2045) Rutherford stated that she accessed the Schlumberger laptop to place personal files—financial information, a draft Acacia press release, and draft job descriptions for a potential Acacia Research energy team—on one or more USB drives. (6 CR 2045) Schlumberger's own Executive IT Support person, DeLeon, acknowledged that employees often back up their personal information before leaving the company. (1 CR 313)

On this record it is impossible to discern—absent impermissible leaps in logic—any breach of the confidentiality agreement that caused harm. An analogy

23

makes this point plain. In a pivotal moment in Daniel Defoe's *Robinson Crusoe*, the protagonist Crusoe is surprised to discover a single footprint in the sand. Crusoe could reasonably infer that he was not alone on the island. But if Schlumberger had authored the novel, Crusoe would exceed the limits of rational inference to conclude, without more, the footprint belonged to the man Friday.

Because Schlumberger did not "establish[ ] by clear and specific evidence a prima facie case for each essential element of the" breach of contract claim, the trial court erred in failing to dismiss that claim along with Schlumberger's other claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005. That part of the trial court's order denying Rutherford's motion to dismiss with respect to the contract claim should be reversed.

### CONCLUSION

For all the reasons stated above and in Rutherford's other briefs, this Court should affirm in part the judgment of dismissal and the award of fees and sanctions, and should reverse only the portion of the trial court's order denying the anti-SLAPP motion to dismiss as to the contract claim asserted by Schlumberger and remand this case to the trial court for (1) a determination of the amount of additional attorney's fees and sanctions that are owing Rutherford and (2) rendition of judgment in Rutherford's favor.

24

Respectfully submitted,

*/s/ Thomas C. Wright*
Thomas C. Wright
State Bar No. 22059400
Shelley J. White
State Bar No. 24056520
Raffi O. Melkonian
State Bar No. 24090587
WRIGHT & CLOSE, L.L.P.
One Riverway, Suite 2200
Houston, TX 77056
(713) 572-4321
(713) 572-4320 (Facsimile)
wright@wrightclose.com
white@wrightclose.com
melkonian@wrightclose.com

Joseph Y. Ahmad
State Bar No. 00941100
Timothy C. Shelby
State Bar No. 24037482
Adam Milasincic
State Bar No. 24079001
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
MENSING P.C.
1221 McKinney Street, Suite 3460
Houston, Texas 77010
(713) 655-1101
(713) 655-0062 (Facsimile)
joeahmad@azalaw.com
tshelby@azalaw.com
amilasincic@azalaw.com

25

Richard B. Specter (admitted *pro hac vice*)
California State Bar No. 114090
CORBETT, STEELMAN & SPECTER
18200 Von Karman Avenue, Suite 900
Irvine, CA 92612
(949) 553-9266
(949) 553-8454 (Facsimile)
rspecter@corbsteel.com

**Counsel for Charlotte Rutherford**

## CERTIFICATE OF COMPLIANCE

I certify that this Brief as Appellant complies with the typeface and word-count requirements set forth in the Rules of Appellate Procedure. This Brief has been prepared, using Microsoft Word, in 14-point Iskoola Pota font for the text and 12-point Iskoola Pota font for any footnotes. This Brief contains 5,048 words, as determined by the word count feature of the word processing program used to prepare this document, excluding those portions of the notice exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Shelley J. White*
Shelley J. White

## CERTIFICATE OF SERVICE

I certify delivering a true and complete copy of this instrument to all counsel of record for appellants/cross-appellees, Schlumberger Limited and Schlumberger Technology Corporation, electronically on March 13, 2015, in compliance with the Texas Appellate Rules of Civil Procedure:

Sean D. Jordan
Kent C. Sullivan
Danica L. Milios
Peter C. Hansen
SUTHERLAND ASBILL & BRENNAN LLP
600 Congress Avenue, Suite 2000
Austin, Texas 78701
sean.jordan@sutherland.com

Craig Smyser
Land Murphy
Justin Waggoner
SMYSER KAPLAN & VESELKA, LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
csmyser@skv.com
lmurphy@skv.com
jwaggoner@skv.com

*/s/ Shelley J. White*
Shelley J. White