**Opinion issued August 13, 2019**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-18-00125-CV

—————————————

### VERTEX SERVICES, LLC, Appellant

### V.

### OCEANWIDE HOUSTON, INC., OCEANWIDE TEXAS, INC., AND OCEANWIDE AMERICA, INC., Appellees

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Case No. 2016-30943A**

## O P I N I O N

In four issues,[1] appellant Vertex Services, LLC (Vertex) challenges the trial

court's rendition of no-evidence and traditional summary judgment in favor of

---

[1] Vertex presents its four issues as follows:

appellees Oceanwide Houston, Inc., Oceanwide Texas, Inc., and Oceanwide America, Inc. (collectively Oceanwide) on Vertex's claims of tortious interference with contract, tortious interference with prospective business relations, common-law misappropriation, and civil conspiracy.

We affirm.

## Background

Vertex is in the business of providing offshore labor and staffing to clients in the energy industry. After losing contracts with its long-time foreign labor supplier, Sea Cross Marine PTE (Sea Cross), and its client, oil and gas company TETRA Applied Technologies, LLC (TETRA),[2] Vertex sued competitor Oceanwide. According to Vertex, Oceanwide "poached" the foreign workers that Vertex had "located and groomed" for its contract with TETRA and then offered them to

---

1. The trial court erred when it improperly concluded that "if [Plaintiff's claim for] misappropriation fails then all four causes of action against the Oceanwide defendants fail because it is the underlying tort."

2. The trial court erred when it failed to recognize that misappropriation is a valid cause of action and encompasses Vertex's claims for unfair competition.

3. Oceanwide's motion for summary judgment failed to address Vertex's claim for tortious interference with its contract with Sea Cross Marine.

4. Vertex presented ample summary judgment evidence to support the essential elements of all four of its claims against the Oceanwide Defendants.

[2]  Vertex also sued TETRA Applied Technologies, LLC and DHD Offshore Services, LLC, neither of which were parties to the summary-judgment motion Oceanwide appeals.

TETRA, "forc[ing] Vertex out of the loop and adversely effect[ing] its business." The dispute arises out of the following events.

Vertex entered into a contract (Vertex-TETRA contract) to supply both foreign and domestic contract labor to TETRA's "Hedron" barge from January 1, 2014 until December 31, 2015. To meet its supply obligations, Vertex procured its foreign labor through Sea Cross pursuant to a June 20, 2010 contract (Vertex-Sea Cross contract)[3] which stated that Sea Cross would provide laborers, who would remain Sea Cross employees, to Vertex on an as-needed basis. Although the Vertex-Sea Cross contract stated an end date of October 9, 2010, the parties continued to operate under it past that date.

On December 1, 2015, TETRA gave Vertex written notice that it was not extending the Vertex-TETRA contract past the initial term because it needed to find lower cost options as a result of the downturn in the energy market. The notice stated that TETRA would contact Vertex "as to how we can continue to partner with Vertex for our offshore contractor labor needs." On the same day, Melanie Fite, TETRA's strategic sourcing manager of global supply chain and procurement, emailed Jason Green, Vertex's vice president and commercial contract contact, advising him that TETRA had sent its notice not to extend the

---

[3]     The contract is between Vertex and Blue Marine Offshore Pte Ltd, which later changed its named to Sea Cross Marine PTE. In this opinion, we use the name Sea Cross to include Blue Marine.

Vertex-TETRA contract and stating that "we really need to talk about next year and a way for TETRA to secure a reduction in the cost for the same."

On December 15, 2015, Fite emailed Green asking him to confirm that Vertex would be able "to submit a proposal by the end of this week on next year's commercial terms, including the discount on rates we spoke about." She also forwarded Green a letter from TETRA's chief operating officer to its suppliers asking for price reductions to meet the effects of falling oil prices. On that same day, Jimmy Ho, owner of Sea Cross, sent Vertex a letter stating:

> Our company has had an ongoing relationship with Vertex Services for the past 6 years (DB1 and Hedron) and business relationships with their owners since 2002. We are happy with the agreement between the companies and prefer to work with them on the Hedron. As we were approached by TETRA Technologies (TOS) to switch to another US company, it is in our best interest to continue our relationship with Vertex Services. With the assistance of Vertex Services, we believe the crews provided to TETRA Technologies (TOS) are some of the best in the world and have been on the Hedron since 2011. We hope to continue the relationship with Vertex Services and provide personnel through them to TETRA Technologies.

On December 21, 2015, Green responded by email to Fite's request for Vertex's bid to supply labor to the Hedron for the 2016 season. He attached Vertex's proposal and stated that it was "unprofessional" for TETRA "to try to go behind our backs and cut us out."

In "February 2016," Sea Cross terminated the Vertex-Sea Cross contract.

On February 2, 2016, TETRA invited Oceanwide to bid on supplying its foreign labor, thus beginning the negotiations between the two companies for the provision of foreign labor to work offshore on the Hedron.

In the first four days of February 2016, John Ford, Oceanwide's president, and Jimmy Ho, owner of Sea Cross, exchanged numerous text messages, including the following:

Ford: Any news on who Tetra will utilize as your partner for the foreign labor? Us?

Ho: My sincere apologies for not being able to give you any feedback on Tetra before as everything is still on the discussion stage. We had several meetings while in Houston and emails and phone conversation with Tetra of how we should go about, with our contract with them. They propose to us to use GMC but we told them we prefer [Oceanwide]. Now, I need to get an agreement from you as with GMC we are able to maintain our rates with them and they mark up a percentage to Tetra. If you are agreeable to a mark up between the safety courses reimburseable by Tetra (they agree) then I can go back to Tetra and tell them we want to go through [Oceanwide].

. . . .

Ford: We have run the numbers and if this is what [V]ertex agreement was or similar we can see why there may have been some issues with their finances.

. . . .

Ho: We have some issue with Vertex which we need to seriously deal with before we can say yes or no to you.

Ford: Ok. If we can help let me know.

5

On February 8, 2016, James Ireland, Vice-President of Oceanwide America, Inc., emailed Ho asking, "Who is Sea Cross?" Ho responded, "Sea Cross is one of our company[ies]." Ho then provided information about its services and made several statements about its previous provision of labor to TETRA through a "local agent," including advising that courses in rigging, firewatch, and fall protection had been supervised "by local agent and billed at cost + [redacted]," and that TETRA would require deck foremen and lead electricians.

That same day, Ireland sent Fite an email entitled "Oceanwide proposal to provide foreign labor to Tetra on board the Hedron." Among other things, the email confirmed that "TETRA will be provided with same members of the foreign labor as was supplied by Sea Cross during 2015," and relayed the information Ho had emailed to Ireland regarding Sea Cross's previous provision of labor to TETRA (discussing supervision and billing of certain courses and requirements for certain categories of labor).

On February 22, 2016, TETRA sent Vertex a letter rejecting the bid it had submitted on December 21, 2015. The letter noted that "as long as the issue of non-payment of Sea Cross for labor supplied to the Hedron in 2015 continues, further discussion of commercial terms for 2016 labor remains unlikely."

On March 4, 2016, TETRA and Oceanwide entered into a labor-supply contract (TETRA-Oceanwide contract) that required Oceanwide "to ensure that

6

TETRA is provided the same members of the foreign labor contingent supplied by Sea Cross or its affiliates to the Hedron during the 2015 season."

Vertex filed suit against Oceanwide for "stealing" the labor force it "spent a considerable amount of money and time" training to fulfill its obligations under the Oceanwide-TETRA contract. Its petition alleged causes of action against Oceanwide for (1) tortious interference with the Vertex-Sea Cross contract, (2) tortious interference with a prospective business relationship with Sea Cross, (3) misappropriation of Vertex's "knowledge of the industry, business practices, and trained employees," and (4) conspiracy to tortiously interfere with the Vertex-Sea Cross contract.

Oceanwide filed a combined no-evidence and traditional summary-judgment motion on all of Vertex's claims against it. The trial court signed an order granting Oceanwide's motion. After stating that "[t]he Motion is granted on all grounds stated therein," the order continued:

> Plaintiff makes the sensible argument that, as one court put it, the defendants should not be able to reap where they have not sown. This "free ride" is couched as a claim for misappropriation. But if misappropriation fails then all four causes of action against the Oceanwide defendants fail because it is the underlying tort.

> The Court has not found any case which applies the concept of misappropriation to people. The topic of workers being restricted in their movement has been extensively treated in its own case law, and more recently through Business and Commerce Code section 15.50. Because of this law and policy, the Court observes that had the workers in question been employed by the Plaintiff they could not

7

have been prevented from going to work for Defendants or anyone else. Why, then, where the Plaintiff does not employ the workers in question, could Plaintiff prevent them going to work for Defendants or anyone else?

This case is not about non-compete contracts. However, preventing competition and free movement of workers is what the case against the Oceanwide defendants is about. Plaintiff cannot do indirectly what it could not do directly.

Vertex appealed.

## Summary Judgment

### A. Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

A party seeking summary judgment may move for both traditional and no-evidence summary judgment. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004); *see* TEX. R. CIV. P. 166a(c), (i). When a party has sought summary judgment on both grounds, we typically review first the propriety of the summary judgment under the no-evidence standard. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

Following an adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence of one or more essential elements of a claim on which the adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *Lightning Oil*, 520 S.W.3d at 45. "More than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 376 (Tex. App.—Houston [1st Dist.] 2012, pet denied) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

A defendant moving for traditional summary judgment bears the burden of proving that no genuine issues of material fact exist on at least one essential element of the cause of action asserted against it and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). If the movant meets its burden, the burden then shifts to the nonmovant to raise a fact issue precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

When a trial court does not specify the grounds it relied upon in making its determination, we will affirm a summary-judgment ruling if any of the grounds

asserted in the motion are meritorious. *Lightning Oil*, 520 S.W.3d at 45; *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

## B. The Summary-Judgment Order

In its first issue, Vertex complains about the trial court's statement in its summary-judgment order that "if misappropriation fails then all four causes of action against the Oceanwide defendants fail because it is the underlying tort." According to Vertex, this indicates that the trial court failed to consider each of its four claims against Oceanwide individually.

The challenged statement does not supplant the trial court's statement that Oceanwide's motion is granted "on all grounds stated therein." Further, conclusions of law are not appropriate under summary judgment procedure because "if summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and response." *Hudson v. City of Houston*, 392 S.W.3d 714, 720 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Thus, to the extent the complained-of statement can be characterized as a legal conclusion (as opposed to an offer of insight into the trial court's legal reasoning), we will not consider it in our review for that additional reason. *See IKB Indus. v. Pro Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) ("[F]indings and

conclusions following summary judgment can have no purpose, should not be filed, and if filed, should be ignored by the trial court . . . .").

We therefore overrule Vertex's first issue.

## C.     Misappropriation

In its second issue and in a portion of its fourth, Vertex challenges the trial court's rendition of no-evidence summary judgment on its misappropriation claim. It argues that it presented evidence of each of the elements of misappropriation, and that the trial court failed to recognize that misappropriation "covers the type of unfair business practices Oceanwide engaged in."

The elements of common law misappropriation (also called unfair competition) are "(1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff." *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571–72 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied).

In both of its issues challenging the trial court's rendition of summary judgment on its misappropriation claim, Vertex argues that its "knowledge of the

11

sourcing and provision of offshore labor to TETRA" qualifies as a "work product" within the meaning of the first element. According to Vertex, the trial court erred by "narrowly focusing on the workers as sort of a commodity" because a common-law misappropriation claim "encompasses the value of one's labor (i.e., expertise, plus time, toil and talent)." Specifically, Vertex maintains that the "institutional knowledge that it developed over time and used to craft this pool of labor," the training and certifications that it provided to the labor pool, and its "ability to navigate the international customs issues involved" constitute its work product.

Recognizing that knowledge, training, and expertise are not typically considered "products," Vertex relies on a 1993 Waco Court of Appeals case to support its argument that such intangibles are capable of misappropriation. In *U.S. Sporting Products, Inc. v. Johnny Stewart Game*, 865 S.W.2d 214 (Tex. App.—Waco 1993, writ denied), a company that sold tape recordings of animal sounds sued a sporting goods company and its president for tortious misappropriation of the recordings. The court held that the tape recordings could be misappropriated because "[a] complainant has a protectable property interest in the product of his labor, regardless of subject matter, so long as that matter confers on him a commercial advantage." *Id.* at 219.

We do not disagree with the Waco court. But its holding addresses a saleable product with commercial value and thus does nothing to answer the question

12

whether knowledge, training, and expertise of human labor can be considered products capable of misappropriation.

In *Thomason v. Collins & Aikman Floorcoverings, Inc.*, No. 04-02-00870-CV, 2004 WL 624926, at *4 (Tex. App.—San Antonio Mar. 31, 2004, pet. denied) (mem. op.), a carpet salesperson sued a carpet manufacturer, alleging it had misappropriated the "fruits of [his] knowledge, work and efforts." The salesperson argued that his efforts to convince the State of Texas to adopt particular carpet specifications that only the carpet manufacturer could fulfill constituted a "work product" that could be misappropriated. *Id.* The court of appeals disagreed, holding that "[a]lthough there is no doubt that [plaintiff]'s time, labor, and skill went into securing [defendant]'s position on the [contract], these efforts did not result in a 'work product' subject to appropriation by a competitor." *Id.*

We conclude that Vertex's knowledge, effort, and expertise are not work products capable of being misappropriated. Similarly, training and certification are not distinct saleable work products, because once imparted, they are inseparable from the laborers themselves. *Cf. Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("An employee . . . may use his general skills and knowledge obtained through employment to compete with the former employer."); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (former employees not barred

13

from using "general knowledge, skill, and experience acquired during employment" in subsequent employment).

Finally, to the extent Vertex argues that the workforce itself was a product, the Vertex-Sea Cross contract it relies on to defeat summary judgment belies this assertion: it states that Sea Cross "agrees to provide laborers, on an as needed basis," and that "all employees are employed, paid by, and under the direct supervision" of Sea Cross. Vertex did not have the right to any particular Sea Cross employees. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d at 727 ("When two parties are competing for interests to which neither is entitled, then neither can be said to be more justified or privileged in his pursuit. If the conduct of each is lawful, neither should be heard to complain that mere unfairness is actionable."). All the Vertex-Sea Cross contract entitled Vertex to receive was a supply of laborers at specified rates. Thus, losing access to the particular Sea Cross employees it had honed and improved to work on TETRA's Hedron was Vertex's risk to bear. Because Vertex failed to present evidence that it created a product subject to misappropriation, the trial court did not err by granting Oceanwide's no-evidence summary-judgment motion on Vertex's common-law misappropriation claim.

We overrule Vertex's second issue and the portion of its fourth issue addressing the common-law misappropriation claim.

**D.** **Tortious Interference with Contract**

In its third issue and a portion of its fourth, Vertex argues that the trial court erred by granting Oceanwide's motion for summary judgment on its claim for tortious interference with contract because (1) the motion addressed the wrong contract, and (2) there is more than a scintilla of evidence to support each of the elements of its claim.

Vertex argues that Oceanwide's summary-judgment motion failed to address the correct contract, and therefore did not assert grounds for summary judgment on its tortious interference with contract claim. Vertex alleged in its petition that Oceanwide interfered with its contract with Sea Cross Marine. But in its summary-judgment motion, Oceanwide mistakenly addressed only Vertex's contract with TETRA.[4] For example, Oceanwide stated that "Vertex did not have an existing contract with Tetra that was subject to interference during the relevant time period" and "Oceanwide did not commit a knowing and intentional act of interference with Vertex's contract with Tetra." Likewise, Oceanwide attached evidence that pertained only to the Vertex-TETRA contract.

We conclude that Oceanwide's summary-judgment motion addressed the wrong contract and therefore did not place Vertex's claim for tortious interference

---

[4]    Oceanwide explains that the Vertex-TETRA contract "was the only contract that discovery had revealed was in existence and the only contract with which Oceanwide had any involvement. The loss of the Vertex/TETRA contract was the only basis upon which Vertex could base a claim for damages."

before the trial court. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (trial court may not grant summary judgment on grounds not presented in motion); *Narnia Invs., Ltd v. Harvestons Sec., Inc.*, No. 14-10-00244-CV, 2011 WL 3447611, at *5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet. (mem. op.) (trial court erred in granting summary judgment on claims not addressed in summary-judgment motion because motion "neither conclusively disprove[d] any element" "nor challenge[d] the existence of any evidence of any element" of unmentioned claims); *see also Nnah v. 125 Interests, Inc.*, No. 14-15-00443-CV, 2016 WL 4543685, at *6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2016, pet. denied) (mem. op.) (two appellees failed to seek summary judgment on appellant's breach of contract claim against them where their no-evidence motion challenged only appellant's contract with different appellee). Therefore, the trial court erred by granting appellees more relief than they sought in their summary judgment motion.

Conceding as much, Oceanwide argues that its no-evidence summary-judgment motion adequately challenged Vertex's claim with regard to the Vertex-Sea Cross contract by including statements such as "Vertex has no evidence to support critical elements of each of the causes of action that it has asserted against Oceanwide," and requesting dismissal of "all claims in this matter" against it. But because these general statements do not identify which elements of Vertex's claim for tortious interference with the Vertex-Sea Cross contract Oceanwide is

16

challenging, they do not satisfy the "specificity requirement" for a no-evidence motion. *See* TEX. R. CIV. P. 166a(i) (no-evidence summary judgment must state "elements as to which there is no evidence"); *see also Nnah*, 2016 WL 4543685, at *6 (no-evidence motion that did not address breach of specific contract failed to seek judgment on that contract despite global statements that motion is directed to "all remaining causes of action" and that nonmovant had no support for "element numbers 1 through 6"); *Guest v. Cochran*, 993 S.W.2d 397, 402 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that sentence in summary-judgment motion purporting to seek judgment "regarding all claims and causes of action asserted" in plaintiff's response to special exceptions and first amended petition was insufficient to place all claims at issue because motion made "no mention of or reference to" of certain of plaintiff's claims). We conclude that because it argued, presented evidence, and challenged elements of tortious interference only with regard to the Vertex-TETRA contract, Oceanwide's motion did not raise grounds for summary judgment on Vertex's claim for tortious interference with the Vertex-Sea Cross Marine contract.

Oceanwide next argues that even if its summary-judgment motion itself did not succeed in putting Vertex's claim for tortious interference with the Sea Cross contract before the court, Vertex's response and its reply did. A summary-judgment motion "must stand or fall on the grounds expressly presented in the

17

motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). And with specific regard to replies, we have held that when a plaintiff amends its petition to add claims against a summary-judgment movant, the movant may not address the new claims by reply but must instead file an amended or supplemental motion. *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *McConnell*, 858 S.W.2d at 341). The purpose of this rule is to avoid unfairness to the nonmovant by assuring it sufficient information and time to respond to the summary-judgment motion. *See McConnell*, 858 S.W.2d at 340–41 (Rule 166a(c) does not permit summary judgment movant "to place, or possibly hide, grounds for summary judgment in a brief filed in support of the motion or in accompanying summary judgment evidence); *Sanders v. Capitol Area Council*, 930 S.W.2d 905, 911 (Tex. App.—Austin 1996, no writ) ("The purpose of the time requirements in [R]ule 166a(c), to give the nonmovant notice of all claims that may be summarily disposed of and the specific grounds on which the movant relies, would be severely undercut if a movant's 'reply' in which new independent grounds were presented could be treated as an amended motion for summary judgment."); *Sams v. N.L. Indus., Inc.*, 735 S.W.2d 486, 488 (Tex. App.—Houston [1st Dist.] 1987, no writ) (granting summary judgment on grounds added in reply would deprive nonmovant of hearing and mandatory 21–day notice of hearing required by Rule 166a(c)); *cf.*

*Sartin v. Beacon Mar., Inc.*, No. 09-08-00166-CV, 2009 WL 1076815, at *3 (Tex. App.—Beaumont Apr. 23, 2009, no pet.) (mem. op.) ("A trial court cannot grant summary judgment on a cause of action addressed only in movant's reply brief, which in this case was filed the Friday afternoon before the Monday hearing.").

Disregarding the parties' summary-judgment briefing addressing Vertex's claim for tortious interference with the Sea Cross contract would serve no purpose here, where Oceanwide's reply did not introduce a summary-judgment ground that Vertex had not had occasion to address. Rather, it replied to the assertion in Vertex's response that Oceanwide had misidentified the contract with which it had allegedly interfered. By its reply, Oceanwide corrected its mistake, specifically identifying the elements of Vertex's claim for tortious interference with its contract with Sea Cross that it contended lacked evidentiary support. *See* TEX. R. CIV. P. 166a(i) (no-evidence summary judgment must state "elements as to which there is no evidence"). Importantly, Vertex does not claim to have been prejudiced by this, and we cannot imagine how it could have been, given that in its response, it not only argued but also presented evidence in an effort to defeat no-evidence summary judgment on its pleaded claim of tortious interference with the correct (Vertex-Sea Cross) contract. *See Blakey v. Texas Dep't of Health*, No. 03-02-00682-CV, 2004 WL 334866, at *6 (Tex. App.—Austin Feb. 12, 2004, no pet.) (mem. op.) ("If a nonmovant is not prejudiced and deprived of fair notice of the

19

grounds underlying the motion for summary judgment and had a fair opportunity to respond, we are not convinced that a movant always would be prohibited from including an additional ground for summary judgment in a reply."). And there is no indication from the record that the trial court's hearing on the motion, response, and reply took place sooner than 21 days after Oceanwide filed its reply. *See id.*; *see also Sams*, 735 S.W.2d at 488 (granting summary judgment on grounds added in reply would deprive nonmovant of hearing and mandatory 21–day notice of hearing required by Rule 166a(c)).

Furthermore, our review of Vertex's response and Oceanwide's reply indicates that both parties directly addressed and fully briefed Oceanwide's no-evidence grounds for summary judgment on Vertex's claim for tortious interference with its contract with Sea Cross. The trial court's order granting summary judgment confirms that it considered the motion "along with the Response, Reply, summary judgment evidence and oral argument." For these reasons, we, too, consider the response and reply in holding that the issue was tried by consent. *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 610 (Tex. App.—Houston [14th Dist.] June 28, 2011, no pet.) ("Trial by consent may be appropriate in some limited summary judgment contexts." (citing *Roark v. Stallworth Oil & Gas Inc.*, 813 S.W.2d 492, 495 (Tex. 1991))); *Henny v. JPMorgan Chase Bank, N.A.*, No. 01-10-00476-CV, 2012 WL 524429, at *4–5 (Tex. App.—Houston [1st Dist.] Feb.

20

16, 2012, no pet.) (mem. op.) (applying concept of "trial by consent" to motion to dismiss, but holding affirmative defenses not addressed in motion were not tried by consent because it was unclear that they "were fully discussed and tried by the parties [in their response and reply] as claimed by [movant]"). Because it was tried by consent, the trial court did not err in granting summary judgment on Vertex's claim for tortious interference with its contract with Sea Cross.

With regard to the portion of its fourth issue dealing with its tortious interference with contract claim, Vertex argues that it presented evidence to defeat Oceanwide's challenge to each of the elements of that claim. *See* TEX. R. CIV. P. 166a(i). To establish a cause of action for tortious interference with contract, a plaintiff must prove that (1) a contract subject to interference exists, (2) the defendant committed a willful and intentional act of interference with the contract, (3) the act proximately caused injury, and (4) the plaintiff sustained actual damages or loss. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Oceanwide argues that there is no evidence that the Vertex-Sea Cross contract was in effect when Oceanwide is alleged to have interfered with it. We agree.

21

Vertex presented its June 20, 2010 contract with Sea Cross, along with affidavit testimony that although the contract stated an end date of October 9, 2010, the parties continued to operate pursuant to its terms "until February 2016 when Sea Cross Marine decided to no longer provide foreign labor for offshore use to Vertex." Vertex also presented Sea Cross's December 15, 2015 letter stating that Sea Cross "has had an ongoing relationship with Vertex Services for the past 6 years." But Vertex did not present any evidence to pinpoint the date on which Sea Cross ended this arrangement. Critically, the only evidence of Oceanwide's alleged interference consists of two emails between Oceanwide and Sea Cross, both dated February 8, 2016. Thus, there is no evidence to show that Vertex and Sea Cross were still operating under the extended contract, which Vertex claims ended in "February 2016," when Oceanwide is alleged to have interfered with it.[5]

Further, even if Vertex had presented evidence that its contract with Sea Cross was in force when the alleged interference occurred, there is no evidence that Oceanwide committed a willful and intentional act of interference with it. *See Rincones*, 520 S.W.3d at 588. Indeed, Vertex has not offered any evidence to show that Oceanwide knew that the Vertex-Sea Cross contract was in effect (if indeed it was) at the time it was alleged to have interfered with it. *Mark III Sys., Inc. v.*

---

[5]     Further, Vertex's summary-judgment response attached text messages dated February 1–4, 2016, between Ho and Oceanwide's president, John Ford, which suggest that Oceanwide's understanding was that the contract between Ho (through one of his companies) and Vertex was no longer in effect.

*Sysco Corp.*, No. 01-05-00488-CV, 2007 WL 529960, at \*5 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, no pet.) (mem. op.) ("To be subject to liability [for tortious interference with contract], an actor must have knowledge of the contract or relation with which he is interfering and of the fact that he is interfering with the performance of that contract."). All Vertex's evidence shows is that Oceanwide knew that Sea Cross had previously supplied TETRA's Hedron labor force through Vertex.

Even if Vertex had presented evidence that the Vertex-Sea Cross contract was in effect at the pertinent time, and that Oceanwide was aware of it, to survive no-evidence summary judgment, Vertex would still have to present evidence that Oceanwide willfully and intentionally interfered with the contract. *See Rincones*, 520 S.W.3d at 588; *see also Ellis v. McKinney*, No. 01-00-01098-CV, 2001 WL 1445892, at \*5 (Tex. App.—Houston [1st Dist.] Nov. 15, 2001, pet. denied) ("Merely contracting with someone while knowing of that person's contract with another is not the same as inducing a breach."). Vertex argues that the Oceanwide-TETRA contract's requirement that Oceanwide use the same workforce that Vertex had supplied to TETRA through its contract with Sea Cross is evidence of Oceanwide's willful and intentional interference, because "the only way to obtain the exact same labor force that was used during 2015 was to interfere with the Vertex and Sea Cross Marine agreement in order to steal the workers then being

23

provided to Vertex." The fact that the Oceanwide-TETRA contract required Oceanwide to use the 2015 Hedron workforce does not compel the conclusion that Oceanwide willfully and intentionally interfered with the Vertex-Sea Cross contract. Missing is any evidence that Oceanwide was "more than a willing participant" in any breach Sea Cross may have committed, or in other words, that it "took an active part in persuading" or "knowingly induced" Sea Cross to breach its contract with Vertex. *See Ferrara v. Nutt*, 555 S.W.3d 227, 243 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("To establish a willful and intentional act of interference, there must be evidence that the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under a contract." (citation omitted)); *see also Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *23 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op.) (to survive summary judgment on tortious interference with contract claim, nonmovant must present "some direct evidence of a willful act of interference") (citing *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993); *Rugaart v. Rodriguez*, No. 13-02-00116-CV, 2003 WL 22671571, at *4 (Tex. App.—Corpus Christi Nov. 13, 2003, no pet.) (mem. op.) (plaintiff must show that defendant "took an active part in persuading" party to contract to breach).

Vertex next argues that the February 8, 2016 email from Jim Ireland of Oceanwide to Melanie Fite of TETRA indicating that Ireland and Jimmy Ho had earlier communicated about how the Vertex-Sea Cross contract dealt with certain issues (supervision and billing for courses the Hedron laborers were required to complete) shows Oceanwide's willful and intentional interference. According to Vertex, this shows that Oceanwide "committed an intentional act of interference with the contract by contacting Jimmy Ho about breaching it." We disagree.

First, there is no evidence that Ireland initiated the contact with Ho or sought the information he relayed. Other of Vertex's summary-judgment evidence indicates that the opposite is true: Ho's email to Ireland earlier that day set forth the precise information relayed in the Ireland-Fite email at issue, in response to Ireland's one-line email asking, "Who is Sea Cross?" Second, the February 8, 2016 email shows only that Oceanwide and Ho had discussed certain aspects of TETRA's training and staffing needs, not that Oceanwide "knowingly induced" Sea Cross (through Ho) to breach the Vertex-Sea Cross contract. *See Ferrara*, 555 S.W.3d at 243; *see also Fluor Enters., Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426, 443 (Tex. App.—Beaumont 2008, pet. denied) (defendant's intent must be to effect breach of the contract).[6]

---

[6] The early February 2016 text messages between Ho and John Ford attached to Vertex's summary-judgment response are inconsistent with Vertex's assertion that Oceanwide induced Sea Cross (through Ho) to breach any contractual obligation it

Accordingly, we hold that Vertex has not presented evidence that Oceanwide acted to induce Sea Cross to terminate its contract with Vertex. *See Lightning Oil*, 520 S.W.3d at 45 (to survive no-evidence summary-judgment, nonmovant must produce "at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements").

Finally, with regard to proximate cause, assuming again that the Vertex-Sea Cross contract was still in effect, Vertex has not presented any evidence that Sea Cross breached it. Vertex presented Green's declaration stating that the parties continued to operate under the contract past its expiration date of October 9, 2010 until February 2016. But Vertex has not offered any evidence or cited any legal authority to show that Sea Cross did not have the right to terminate the contract when it did. As the Texas Supreme Court has held, "merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). In other words, Vertex has no cause of action against Oceanwide for inducing Sea Cross to do what it had a right to do. *See id.; Schimmel v. McGregor*, 438 S.W.3d 847, 861 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also Faucette v. Chantos*,

---

may have had to Vertex. For example, the texts indicate that Ho was already in separate discussions with TETRA when the text exchanges occurred. The texts also show that Ford merely asked Ho whether he thought TETRA would consider using Oceanwide as Ho's (through Sea Cross) partner in supplying labor for 2016, and that Ho responded that he would tell TETRA he wanted TETRA to use Oceanwide if Ford would agree to allow Ho to maintain his rates.

322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[M]erely inducing one of the parties to exercise his right to terminate contractual relations after giving the required notice does not *necessarily* constitute tortious interference with contract under Texas law." (quotation omitted)). Any "harm that results only from lawful competition is not compensable by the interference tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001).

No reasonable juror could find that Oceanwide interfered with the Vertex-Sea Cross contract based upon the record evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (in reviewing summary judgment, appellate courts "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented"). We therefore hold that Vertex has not presented any evidence that Oceanwide willfully and intentionally interfered with the Vertex-Sea Cross contract.

We overrule Vertex's second issue and the portion of its fourth issue addressing its tortious interference with contract claim.

E.     **Tortious Interference with Prospective Business Relations**

As part of its fourth issue, Vertex argues that the trial court erred in granting Oceanwide's motion for summary judgment on its tortious interference with prospective business relations claim because it presented more than a scintilla of

evidence to support the essential elements of that claim.[7] Vertex's only appellate challenge to the court's rendition of summary judgment on this claim is that it presented evidence that Oceanwide tortiously interfered with its prospective business relations with TETRA. But in its live petition, Vertex only alleges interference with its prospective business relations with Sea Cross. Likewise, Oceanwide moved for summary judgment, and the trial court, in rendering summary judgment on all grounds alleged in Oceanwide's motion, granted summary judgment on Vertex's tortious interference with prospective business relations claim based only on Vertex's relations with Sea Cross.

Because Vertex has failed to challenge the only grounds on which the trial court rendered summary judgment on Vertex's tortious interference with prospective business relations claim, we affirm the judgment of the trial court. *See Hernandez v. Kroger Texas L.P.*, No. 01-15-00836-CV, 2017 WL 1429200, at *2 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, pet. denied) (mem. op.) ("If

---

[7] To establish a cause of action for tortious interference with prospective contract or business relationships, a plaintiff must show that (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361–62 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed.").

We overrule the portion of Vertex's fourth issue addressing its tortious interference with prospective business relations claim.

## F.    Conspiracy

In a portion of its fourth issue, Vertex argues that it produced sufficient evidence on each of the elements of its civil conspiracy claim to survive Oceanwide's no-evidence summary-judgment motion.

The Texas Supreme Court has defined the elements of civil conspiracy as: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, No. 17-0630, — S.W.3d —, 2019 WL 1495211, at \*4 (Tex. Apr. 5, 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

Civil conspiracy is not an independent tort, but a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Id.*; *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Therefore, civil conspiracy "survives or fails alongside" the underlying tort alleged. *Agar*, 2019 WL 1495211, at \*3.

Vertex argues on appeal that Oceanwide conspired with TETRA to wrongfully interfere with Vertex's contract with Sea Cross. Because we have held that Vertex's tortious interference with contract claim did not survive summary judgment, we further hold that its civil conspiracy claim "fails alongside" it. *Id.*

## Conclusion

We affirm the trial court's summary-judgment order.


Peter Kelly
Justice

Panel consists of Justices Keyes, Kelly, and Goodman.